LAW OFFICE OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
499 14th Street, Suite 300
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698

Attorneys for Plaintiff
Cynthia Turano

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| CYNTHIA N. TURANO<br><br>Plaintiff,<br><br>vs.<br><br>ALAMEDA COUNTY AND ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, CITY OF OAKLAND, OAKLAND POLICE, DEPARTMENT, J. DURANT (9567P), J. ADAYA (9513P), RYAN PAUL TIOYAO (9557), AND DOES 1-100.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This is an action for equitable relief and for redress for the violation of rights guaranteed to the plaintiff by state and federal laws, including: (a) damages for deprivations by defendants acting under color of State law of plaintiff's rights, privileges and immunities guaranteed by the First, and Fourteenth Amendments to the United States Constitution pursuant to 42 USC 1983 and 1988 while plaintiff was under the custody and control of County of Alameda and Alameda County Sheriff's

Office on behalf of plaintiff individually and as representative of all females where were similarly situated; and,

2. This is an action for the wrongful arrest of plaintiff by the City of Oakland and the Oakland Police Department as to plaintiff individually.

## JURISDICTION

3. The jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 1983 et seq.; 28 U.S.C. §§ 1331 and 1343(a). Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. § 1367. Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201 and 2202, and 42 U.S.C. §1983.

4. Venue is proper in the Northern District of California as the events complained of occurred in this district.

5. Plaintiffs have filed administrative claims with the City of Oakland and Alameda County in compliance with California Government Code §§ 910, et seq. These claims have been denied expressly or by operation of law.

## INTRADISTRICT ASSIGNMENT

6. The claims alleged herein arose in the County of Alameda, State of California. Therefore, venue and assignment, under 28 U.S.C. § 1391(b), lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

## THE PARTIES

7. Plaintiff, CYNTHIA TURANO is a female resident of Alameda County, a licensed and practicing architect. At the time of the occurrence, she was involved in a divorce proceedings filed by her spouse, Edward J. Turano. The two were then residing together in their common residence, a single family house, located in Alameda County.

8. Defendant COUNTY OF ALAMEDA is a "public entity" within the definition of Cal. Gov. Code § 811.2.

9. Defendant ALAMEDA COUNTY SHERIFF'S OFFICE is a "public entity" within the definition of Cal. Gov. Code § 811.2.

10. Defendant GREGORY J. AHERN is the Sheriff for Alameda County. As such, he has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at

Alameda County jails, as described below. He has, therefore, directly and proximately caused, and will continue to cause in the future, the injuries and violations of rights set forth below. Defendant Ahern is sued in his official capacity only.

11. Defendant BRETT M. KETELES is the Assistant Sheriff for Alameda County in charge of the Detentions and Corrections Unit and defendant TOM MADIGAN is the commander in charge of the Detentions and Corrections Unit which includes the two Alameda County jails, Glen Dyer and Santa Rita, and was so in charge of Santa Rita Jail on December 26, 2016. Defendants BRETT KETELES and TOM MADIGAN as employees of the Sheriff's Office and as the detention and corrections commander for the Sheriff's Office, held command and policymaking positions. They, along with Defendant Ahern, participated in the planning, supervision, and the execution of the manner in which plaintiffs and class members are incarcerated in the Alameda county jail facilities and ACSO's conduct complained of herein. Defendants BRETT KETELES and TOM MADIGAN caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Alameda County jails, particularly as to the treatment of women as described below.

12. Defendants D. SKOLDQVIST was the responsible officer for Santa Rita Jail. Defendant D. SKOLDQVIST at all times relevant herein, is and was an employee of the Sheriff who held supervisory, command and/or policy-making positions, and who participated in the authorization, planning, supervision, and the execution of the police conduct and sheriff's conduct complained of herein.

13. At all times relevant herein, all of the above individual Defendants AHERN, KETELES, MADIGAN and D. SKOLDQVIST were officers and employees were acting under the color of law, under color of authority and in the scope of their employment as Command and Supervisory Personnel of the Alameda County Sheriff's Office. Additionally, upon information and belief, one or more of these Defendants failed, with deliberate indifference to Plaintiffs' and class members' rights, to adequately train and supervise ACSO sheriff's deputies and staff who were involved in violating the rights of the Plaintiffs and class members. All of the above individual defendants are sued in their official capacities.

14. Plaintiff is informed and believe and therefore allege that each of said defendants DOES 1 through 50, are and/or were agents or employees of Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, and acted within the scope of that agency or

employment or under color of state law. DOE 1-50 are defendants who caused, and are responsible for, the below-described unlawful conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to plaintiffs' rights to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action. Plaintiff alleges that DOE 1 through 50 proximately caused said incidents, injuries, violation of constitutional and legal rights, and damages by reason of their negligence, breach of duty, negligent supervision, management or control, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOE 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained and will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained. DOE 1 through 50 are sued in their individual and official capacities.

15. Defendant CITY OF OAKLAND is a "public entity" within the definition of Cal. Gov. Code § 811.2.

16. Defendant OAKLAND POLICE DEPARTMENT is a "public entity" within the definition of Cal. Gov. Code § 811.2.

17. Defendants J. DURANT (9567P); J. ADAYA (9513P); RYAN PAUL TIOYAO (9557), were and at all material times herein, a deputy sheriff employed by Defendant CITY OF OAKLAND and OAKLAND POLICE DEPARTMENT, acting within the scope of that agency or employment and under color of state law. Defendants J. DURANT; J. ADAYA; and RYAN PAUL TIOYAO are sued in their individual capacity.

18. Plaintiff is informed and believe and therefore allege that each of said defendants DOES 51 through 100, are and/or were agents or employees of Defendants CITY OF OAKLAND and OAKLAND POLICE DEPARTMENT, and acted within the scope of that agency or employment or under color of state law. Plaintiff alleges that these DOE 51 through 100 proximately caused said incidents, injuries, violation of constitutional and legal rights, and damages by reason of their

negligence, breach of duty, negligent supervision, management or control, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOE 51 through 100, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained and will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

## OCCURRENCE - PART ONE

19. On Christmas Day, DECEMBER 25, 2016, at 1:21 p.m. in the afternoon, Edward J. Turano phoned in a complaint to the Oakland Police Department alleging that his wife Cynthia Turano had violated a temporary restraining order by taking a camera that he claimed belonged to him. E. Turano stated that Cynthia Turano still resided in the house. There was no report of physical contact nor of violence.

20. Oakland Police Department responded to this call by dispatching three uniformed and armed police officers, defendants Duran, Adaya and Tloyao; over twelve (12) hours later after 1:00 a.m., to 311 Gravatt Drive, Oakland, CA, a single family residence.

21. At the residence, these officers interviewed Edward Turano who alleged that he was "being harassed" by plaintiff; that in the afternoon, plaintiff had "used" his camera without his permission, and had violated a domestic violence restraining order by coming within three (3) feet of E. Turano's person. The camera had been returned by 2:30 pm the prior afternoon and put back into place.

22. At the time the three defendants Duran, Adaya and Tloyao arrived at 311 Gravatt Drive, after 1 a.m. in the morning, plaintiff was asleep in her pajamas in her bed, in her bedroom separate from Edward Turano. Plaintiff was not engaged in any activity other than sleeping, and was not interacting with E. Turano in any manner. The camera was securely placed in its regular place.

22. These officers did not witness any action, any movement or any speech by Cynthia Turano prior to waking her up, in her room. Oakland police officers woke plaintiff up, handcuffed her, and arrested her for violation of a restraining order. On Christmas Day night. Plaintiff was placed, handcuffed in the back of Ofc. Tioyao's police car, and driven to Santa Rita Jail for incarceration.

23. The District Attorney declined to file charges.

## OCCURRENCE - PART TWO

24. At Santa Rita Jail, defendant Tloyao transferred Plaintiff Cynthia Turano into the custody and control of the Alameda County Sheriff's Office. First Plaintiff was placed in a cell, which had fecal matter spread over the walls and bench. There were two or more old bloody hand print smears. These hand smears were the hue of dark reddish brown, and dried. These prints were on the wall. The wall also had what looked like mucus and blood, perhaps it was spit that contained blood. There were no less than on three medical pads with human hair stuck to the device, on the wall. The sign in the cell with the contact numbers for assistance had been scratched so badly, the number was illegible.

25. Plaintiff Turano was then taken out of this first cell by a female deputy and searched in the hallway without any privacy screening. Plaintiff was then placed in another cell and informed that she would be interviewed by a nurse. This second cell had piles of used and partially rotting food on either side of a long bench. The food smelled and appeared old due to discoloration. Some of this food was partially eaten. There were stains of dried fluids on the walls and benches, but the original identity of these fluids was not ascertainable. Garbage and used tissue or toilet paper were piled along side the stainless steel toilet in the room. There were no trash receptacles in the room.

26. There was a phone in the cell and next to the phone was a sign with advertisement for bail bondsmen, with all the phone numbers listed. This sign was the cleanest spot in the entire room. On the wall above the bench was a sign with phone numbers for help if you were being sexually or physically abused by an officer, but any phone numbers were illegible. This room was constructed out of cinderblocks and was very cold.

27. After a period of time Plaintiff was interviewed/questioned by a male Santa Rita deputy. She informed him that she required feminine hygiene products. She also told this same male deputy that she was not feeling well. She was informed by this male deputy that she would be seen by a nurse. Ms. Turano was not provided with a menstrual pad nor any other feminine hygiene product. She was not seen by a nurse.

28. Ms. Turano was moved to a different holding cell. The cell was filthy and strewn with garbage. Although there were only a few women in this cell, the accumulation of garbage showed that a number of other individuals had been through that cell. There were uneaten and left

over food, food debris, and used medical supplies. The floor and walls had dried human fluids and human discharges on them. Because plaintiff was menstruating and bleeding over her clothes, the blood seeped through her pants and onto the concrete bench. Plaintiff's menstrual blood began to puddle on the bench. Due to this situation, Plaintiff began knocking and banging on the door and window to get help. During this long period of time, Plaintiff never saw a sheriff's deputy pass by. Not a single sheriff's deputy checked the room, not even peering through the glass window. Nor was there any effort by the Alameda County Sheriff's Office to remove the accumulated garbage in the cell or clean the cell.

29. Not a single cell had a trash receptacle.

30. During this period of time, the only humans outside the cell which Plaintiff saw, were individuals in civilian clothing, with identification badges. Although Plaintiff continued to bang on the window and door, these individuals in civilian clothing refused to make eye contact, and instead look away.

31. Finally, despite hours of banging on the window and door, the only time a sheriff's deputy appeared at plaintiff's cell was when a female deputy opened the door and brought in a third woman. At this time, Plaintiff requested menstrual pads and the female deputy returned with two pads. By this time, Plaintiff had already bled through her pants. In putting on one of the pads, Plaintiff got blood all over hands. The cell provided nothing to clean hands and could only rinse some of the blood off her hands in the drinking fountain, and was forced to wipe her hands off on clean parts of her clothing.

32. At 9:30 a.m., Plaintiff was escorted to the discharge area, where the Sheriff gave her a bus ticket and a BART ticket. Prior to being taken to discharge, all of the garbage in Plaintiff's cell was still there. Plaintiff, during the entire time at Santa Rita Jail, did not see a single cell be cleaned, nor did she see any cleaners, and there had been no effort to remove any garbage or waste food. There was no any means for Plaintiff to clean up the puddle of menstrual blood on the bench, which remained when she was removed from the cell.

33. After her discharge, Ms. Turano was able to catch a bus to BART, and took BART to Oakland. She traveled on the bus and BART dressed in wet, visibly blood-stained clothing.

## MUNICIPAL & SUPERVISORY ALLEGATIONS

As to defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE 1 to 50's

34. Defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE 1 to 50's failure to adequately train, supervise, and/or discipline their sheriff deputies and employees has created, fostered, and/or contributed to a callous culture and system where the rights of women placed into care and custody are violated and their needs are not met.

**35.** Defendant GREGORY AHERN, acting as the Sheriff for Alameda County, was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail. Defendant AHERN has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE since 1980, and has acted as the Sheriff since 2006, when he was appointed by then outgoing Sheriff Plummer.

36. Defendant BRETT KETELES is acting as the Assistant Sheriff for Alameda County Sheriff's Office, was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail. Defendant KETELES has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE since approximately 1991, and has acted as the Acting Sheriff since 2011.

37. Defendant TOM MADIGAN is acting as a Commander for Alameda County Sheriff's Office, was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail. Defendant Madigan has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE for over 20 years.

38. Defendant D. SKOLDQVIST is acting as a Captain for Alameda County Sheriff's Office and is the officer in charge of Santa Rita Jail, was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail. Defendant

Madigan has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE for over 20 years.

39. Defendants DOE 1 to 50 are/were policy-making authorities based on a delegation of authority for Defendants ALAMEDA COUNTY SHERIFF'S OFFICE and ALAMEDA COUNTY as it relates to the training, supervision, and discipline of sheriff deputies and employees under his/her command, including the treatment, custody and care of individuals placed into the custody of Santa Rita Jail. Defendant Madigan has

40. Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE 1 to 50 knew or should have known that the subordinate employees under their command, including were inadequately trained, supervised, or disciplined resulting from their inadequate policies, customs, or practices.

41. Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE 1 to 50 maintained policies, customs, or practices deliberately indifferent to and/or acquiescing in, and/or failed to maintain policies, customs, or practices when it was obvious that they were needed to prevent the mistreatment of inmates, particularly female inmates placed into the custody and control of the Sheriff's jails and with whom their employees would necessarily have contact with, power and control over. The presence of these policies, customs, or practices is confirmed by and consistent with the mistreatment suffered by plaintiff while in the custody and control of The Sheriff while in Santa Rita Jail.

42. Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, have a significant history of problematic treatment of female inmates, particularly with housing female inmates in unsanitary and garbage filled cells which pose a health hazard, and failing to provide for the feminine hygiene needs of female inmates. Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE settled, less than six (6) months prior to the subject incident, similar allegations in Weills et al. v. Ahern et al. 2:17-cv-01648-KJM-DB, United District Court, Northern District, in which said defendants agreed to adopt policies and practices to remedy these complaints.

43. Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE

1 to 50 were or should have been on notice of these policies, customs, or practices, or the inadequacy of the policies, customs, or practices, through multiple sources, including past and subsequent instances of failure of detention deputies to comply with:

i) timely observation of inmates;

ii) privacy screening for the pat search of female inmates including visual inspection of the interior of each holding cell used to hold inmates, to inquire if supplies are needed, and to correct cleanliness or maintenance problems

iii) trash receptacles in all holding cells for disposal of used feminine hygiene products

iii) for garbage to be removed from each holding cell no less than once every two hours;

iv) mopping and wiping each ITR cell at least once per shift;

v) providing articles necessary for maintaining personal hygiene to all inmates;

vi) providing female inmates with feminine hygiene products within thirty minutes of request;

vii) insuring that a supply of feminine hygiene products adequate to meet the needs of female inmates;

v) the ITR Sergeant inspecting all areas at least once each shift; and,

vi) documentation of compliance with the cleaning and observation requirements and policies.

52. On information and belief, additional evidence and information related to Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE 1 to 50's policies, customs, or practices will be sought and obtained during the course of this litigation. Although access to the existence or absence of internal policies, customs, or practices, prior to discovery, is necessarily limited, on information and belief, Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE 1 to 50 have access to and/or knowledge of past events and to statements of internal policies, customs, or practices at issue and, in some respects, may be in sole possession of evidence and facts needed to support or refute these claims.

<u>As To CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, and Does 51-100.</u>

53. Defendants CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, and Does 51-100 failure to adequately train, supervise, and/or discipline their officers has created, fostered,

Turano v. County of Alameda, Civil Complaint 2017.12.5

and/or contributed to a callous culture and system where each of the defendants on prior occasions has violated the rights of other individuals in a manner similar to the one alleged herein.

54. It is the custom, pattern or practice of the defendants to violate an individual's rights in the manner set forth herein.

55. The violation of individual rights as set forth herein is constant and widespread throughout the municipal government.

56. Throughout the conduct, the defendants utilized their actual and apparent authority over the individuals to carry out the violations of the individual's rights guaranteed by the constitution, statutory and common law.

57. On information and belief, plaintiff alleges that prior to the events referred to in this complaint, similar complaints were made against defendants Duran, Adaya and Tloyao

58. At all relevant times, the municipal defendant staffed its police department with officers, including defendants Duran, Adaya and Tloyao who were unsupervised, or inadequately supervised, and inadequately trained.

69. At all relevant times, the defendants knew, or should have known, that staffing a municipality with employees, including all the individual defendants, who were unsupervised, undisciplined, inadequately trained and wholly unsuited to interact with the public would pose an excessive risk that members of the public would be subjected to behavior and conduct which would violate the public's individual rights protected by the constitution, statutory and common law.

60. At all relevant times, the defendants knew, or should have known, that failing or refusing to take corrective measures against employees, including the individual defendants DURAN, ADAYA and TLOYAO, who were unsupervised or inadequately supervised and inadequately trained would result in repeated incidents of violations of individual rights protected by the constitution, statutory and common law.

61. At all relevant times, the defendants failed to adopt policies or procedures that would have prevented the violations of individual rights alleged herein, including but not limited to additional training and supervision.

## CLASS CLAIM

62. The class claim is being submitted on behalf of female arrestees who are placed into the custody of the Alameda County Sheriff's Office within a 6 month period of December 26, 2016, and held in the Intake, Transfer and Release (ITR) unit. The class claim is submitted as to

defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE 1 to 50.

63. Plaintiff asserts that there are questions of law and fact common to the class, which include but are not limited to:

1) Whether Alameda County Sheriff's Office, Alameda violate their constitutional duty under the 14th amendment to not administer punishments to individuals who are pre-trial detainees when they hold women in filthy, unsanitary cells with discarded waste food, used medical devices and garbage, and human feces and fluids on benches, walls and floors,

2) Whether the conditions of Plaintiff and class members confinement in the jail is unreasonable and inhumane; whether Alameda County and the Alameda County Sheriff's Office has policies of deliberate indifference to violations of citizens' constitutional rights by their employees and agents, and whether these events were the product of such policy;

3) Whether rights of members of the class under the 14th amendment to equal protection are violated when women who request and need feminine hygiene products are not provided with feminine hygiene supplies, nor a means to maintain feminine sanitation and are forced to bleed over their clothing and over the benches and floors of the cells.

4) Whether Alameda County and the Alameda County Sheriff's Office and their high ranking supervisors failed to properly train and supervise and failed to require compliance with existing policies and procedures, by officers, deputies and other employees who had custody of Plaintiff and class members at Santa Rita Jail Plaintiffs, and failed and refused to adopt appropriate and necessary policies an procedures regarding the treatment and care of Plaintiff and class members;

5) Whether Alameda County has a practice of failing to provide reasonable and humane conditions of confinement including depriving the class of access to adequate sanitation and feminine and personal hygiene, thereby violating their rights.

64. Defendants are expected to raise a common defense, including denying that these practices and policies violate constitutional rights.

65. The claims of the plaintiffs are typical of those of the plaintiff class, as their claims

arise from the same policies, practices, courses of conduct, and conditions of confinement, and their claims are based on the same legal theories as the class' claims. The cause of the named plaintiffs' injuries is the same as the cause of the injuries suffered by the rest of the class, namely defendants' policies and practices. Injunctive and/or declaratory relief for the class as a whole is appropriate.

66. Plaintiffs are capable of fairly and adequately protecting the interests of the plaintiff class because plaintiffs do not have any interests antagonistic to the class. Plaintiffs, as well as class members, seek to enjoin the unlawful acts, policies, and practices of the defendants.

67. This action is maintainable as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(1) because the number of class members is numerous and prosecution of separate actions by individuals create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for defendants. Moreover, the prosecution of separate actions by individual members is costly, inefficient, and could result in decisions with respect to individual members of the class that, as a practical matter, would substantially impair the ability of other members to protect their interests.

68. This action is also maintainable as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(2) because defendants' policies and practices that form the basis of this Complaint are generally applicable to all the class members, thereby making class-wide declaratory and 61. Injunctive relief is appropriate. Common questions of law and fact clearly predominate within the meaning of Rule 23(b)(2) as set forth above. Class treatment provides a fair and efficient method for the adjudication of the controversy herein described, affecting a large number of persons, joinder of whom is impracticable.

**FIRST CLAIM FOR RELIEF**

Violation of the Eighth Amendment Against Cruel & Unusual Punishment

(42 U.S.C. § 1983)

69. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 68 of this Complaint.

70. Plaintiffs advance this claim on their own behalf, and on behalf of all class members against all defendants

71. Defendants have deprived and continue to deprive plaintiffs and the class of the

minimal civilized measure of life's necessities, and have violated their basic human dignity and their right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution for each of the reasons set forth below.

72. There is no valid penological reason to force female pre-trial detainees to stay in cole, filthy, unhygienic cells, strewn with garbage, in which human feces and bodily fluids are on the walls, floors and seats.

73. There is no valid penological reason to force female pre-trial detainees to bleed over their clothing, to bleed over benches and seats; to be forced to wear, wet, bloody clothing; to wear wet bloody clothing for long periods of time and to be in public with such clothing on.

74. There is no valid penological reason to deprive female pre-trial detainees of basic human need including access to feminine hygiene supplies, a clean place to sit, access to hygiene supplies and the ability to wash one's hands and a minimum of cleanliness.

75. Defendants and each of their deliberate indifference to these basic human needs violates defendants' own policies and the policies of the civilized world, including the United Nation's Standard Minimums for Treatment of Prisoners, adopted in 1955; the European Union's European Prison Rules adopted in 2006;the Eighth Amendment to the United States Constitution; and, Article 1 §17 of the California Constitution.

## SECOND CLAIM FOR RELIEF

Violation of Equal Protection Fourteenth Amendment of the United States Constitution

(42 U.S.C. § 1983)

76. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 75 of this Complaint.

77. Plaintiffs advance this claim on their own behalf, and on behalf of all class members against all defendants.

78. Requiring Plaintiffs and class members to remain in filthy, unsanitary cells, smeared with human feces and discharges; and strewn with garbage, decomposing food, and medical wastes; cells without garbage receptacles;

80. Denying Plaintiffs and Class Members access to feminine hygiene products, the means to maintain female hygiene, and means to maintain personal cleanliness; requiring plaintiff and class members to bleed into their clothes and onto benches, to remain in wet bloody clothing for

long periods of time is sexual discrimination and a violation of the 14th amendment for equal protection.

82. Defendants' above-described conduct violated plaintiffs' rights to equal protection under the Fourteenth Amendment to the United States Constitution and Article 1 §7 of the California Constitution.

### THIRD CAUSE OF ACTION
### AS TO
### DEFENDANTS CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, DURAN, ADAYA AND TLOYAO
### (FOURTH AMENDMENT VIOLATION)

83. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

84. The policies and conduct of the defendants violated her right to be free of unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution.

### FOURTH CAUSE OF ACTION
Bane Act
(Cal. Civ. Code § 52.1(b); Cal. Gov. Code §§ 815.2(a) & 820(a))

85. Plaintiff realleges and incorporates the allegations of the preceding paragraphs 1 to 84, to the extent relevant, as if fully set forth herein.

86. Defendants DURAN, ADAYA AND TLOYAO, acting or purporting to act in the performance of their official duties as a law enforcement officer, arrested plaintiff without probable cause in violation of her Fourth and Fourteenth Amendment rights protected by the U.S. Constitution and art. I, § 7 of the California Constitution.

87. Defendants CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, and DOE 51 to 100, acting under color of state law and as policy-making authorities, maintained policies, customs, or practices permitting or deliberately indifferent to, or failed to maintain policies, customs, or practices when it was obvious that they were needed to prevent, the use of excessive force, or ratified and approved of Defendants DURAN, ADAYA AND TLOYAO decisions and the basis for them, and were the moving force, by threats, intimidation, or coercion,

behind Defendant DAVID WELLS's violation of Plaintiffs L.F. and K.F.'s Fourth and Fourteenth Amendment rights secured by the U.S. Constitution and art. I, § 7 of the California Constitution.

88. Defendants CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, and DOE 51 to 100, are indirectly and vicariously liable, through the principles of respondeat superior, for injuries proximately caused by acts or omissions of their employees acting within the scope of their employment.

89. As a direct and proximate result of Defendants CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, DURAN, ADAYA AND TLOYAO and DOE 51 to 100's actions and inactions, Plaintiff suffered injuries entitling her to receive compensatory damages against Defendants CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, DURAN, ADAYA AND TLOYAO and DOE 51 to 100's, declaratory and injunctive relief against Defendants CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, DURAN, ADAYA and TLOYAO

WHEREFORE, Plaintiff CYNTHIA TURANO prays for relief as hereunder appears.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CYNTHIA TURANO seeks Judgment as follows:

1. For an award of compensatory, general, and special damages against Defendants according to proof at trial;

2. For an award of declaratory or injunctive relief, enjoining and restraining Defendants ALAMEDA COUNTY AND ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, CITY OF OAKLAND, OAKLAND POLICE, DEPARTMENT, J. DURANT (9567P), J. ADAYA (9513P), RYAN PAUL TIOYAO (9557), AND DOE 1-100 from continuing or repeating the policies, customs, or practices complained of herein;

3. For an award of statutory penalties, pursuant to Cal. Civ. Code § 52.1 and any other statute as may be applicable;

4. For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, Cal. Civ. Code 52.1, Cal. Code Civ. Proc. § 1021.5, or any and any other statute as may be applicable; and

5. For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: December 5, 2017                LAW OFFICES OF YOLANDA HUANG

By:_____
    YOLANDA HUANG
    Attorney for Plaintiff C. Turano and
    Members of the Class