UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA N. TURANO,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants. | Case No. 17-cv-06953-KAW<br><br>**ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION FOR LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 18, 25, 27 |

On December 5, 2017, Plaintiff Cynthia Turano filed the instant class action, bringing constitutional and various state claims related to her experience while in the custody of defendant Alameda County Sheriff's Office. (Compl. ¶ 1, Dkt. No. 1.) Plaintiff also brought an individual action based on wrongful arrest by Defendant Oakland Police Department. (Compl. ¶ 2.) Pending before the Court are: (1) motion to dismiss filed by Defendants City of Oakland, Oakland Police Department, J. Adaya, J. Durant, and Ryan Paul Tloyao (collectively, "Oakland Defendants"); (2) motion to dismiss filed by Defendants County of Alameda and Alameda County Sheriff's office, Gregory J. Ahren, Brett Keteles, Tom Madigan, and D. Skoldqvist (collectively, "Alameda Defendants"); and (3) Plaintiff's motion for leave to amend the complaint. (Oakland Defs.' Mot. to Dismiss, Dkt. No. 18; Alameda Defs.' Mot. to Dismiss, Dkt. No. 25; Plf.'s Mot. to Amend, Dkt. No. 27.)

Upon consideration of the parties' filings, as well as the arguments presented at the June 7, 2018 hearing, the Oakland Defendants' motion to dismiss is GRANTED, the Alameda Defendants' motion to dismiss is GRANTED, and Plaintiff's motion for leave to amend is DENIED.

**I.   BACKGROUND**

On December 25, 2016, at 1:21 p.m., Plaintiff's husband, Edward J. Turano, called the

Oakland Police Department, claiming that Plaintiff had violated a temporary restraining order by taking a camera that he stated belonged to him. (First Amended Compl. ("FAC") ¶ 19.) Mr. Turano stated that Plaintiff still resided in the house, and did not report any physical contact or violence. (FAC ¶ 19.) On December 26, 2016, around 1:00 a.m., Defendants Duran, Adaya, and Tloyao responded to Mr. Turano's call. (FAC ¶ 20.) The officers interviewed Mr. Turano, who asserted that he was being harassed by Plaintiff, that Plaintiff had used his camera without permission that afternoon, and that Plaintiff had violated a domestic violence restraining order by coming within three feet of him. (FAC ¶ 21.) The officers were informed that the camera had been returned by 2:30 p.m. (FAC ¶ 21.)

At the time of the officers' arrival, Plaintiff was asleep in her bedroom. (FAC ¶ 22.) The officers woke Plaintiff up, handcuffed her, and arrested her for violating the restraining order. (FAC ¶ 22.) Plaintiff was taken to Santa Rita Jail, where she was transferred into the custody of Defendant Alameda County Sheriff's Office. (FAC ¶¶ 22, 24.) Plaintiff was placed in a cell that had fecal matter spread over the walls and bench. (FAC ¶ 24.) The wall also had bloody hand smears, mucus, blood, and medical pads with human hair stuck to the device. A sign with contact numbers for assistance was scratched and illegible. (FAC ¶ 24.)

Plaintiff was taken out of the cell and searched in the hallway without any privacy screening. (FAC ¶ 25.) She was then taken to a second cell and told she would be interviewed by a nurse. The second cell contained rotting food, stains of dried fluids on the walls and benches, and garbage and used tissue or toilet paper alongside the toilet in the room. There were no trash bins. (FAC ¶ 25.) The cell was constructed from cinderblocks and was cold, but Plaintiff was not provided with adequate clothing or a blanket. (FAC ¶ 26.)

Plaintiff was eventually interviewed by a male deputy. (FAC ¶ 27.) Plaintiff told the deputy that she required feminine hygiene products, and that she was not feeling well. The deputy said she would be seen by a nurse. Plaintiff, however, was not provided any feminine hygiene products or seen by a nurse. (FAC ¶ 27.)

Plaintiff was then moved to a third holding cell. (FAC ¶ 28.) The cell was also strewn with garbage, including food and used medical supplies. The cell floors and walls had human

2

fluid and discharge on them. The cell also did not contain any trash receptacle. (FAC ¶ 29.) Plaintiff, meanwhile, was menstruating and bleeding over her clothes, and the blood seeped through her pants and onto the concrete bench. (FAC ¶ 28.) As a result, Plaintiff knocked and banged on the door and window to get help, but no deputies passed by or checked the room. (FAC ¶ 28.) Instead, Plaintiff only saw individuals in civilian clothing with identification badges, who did not respond to Plaintiff's requests for assistance. (FAC ¶ 30.)

After hours of banging on the door and window, a female deputy arrived, bringing in another woman. (FAC ¶ 31.) Plaintiff again requested menstrual pads, and the female deputy returned with two pads. Plaintiff put the pad on, getting blood on her hands in the process. Because there was no soap or paper towels in the cell, Plaintiff rinsed her hands in the drinking fountain, and wiped her hands off on her clothing. (FAC ¶ 31.)

Around 9:30 a.m., Plaintiff was discharged, and she was given a bus ticket and BART ticket. (FAC ¶ 32.) Prior to her discharge, Plaintiff never saw the cells cleaned. Plaintiff took public transportation back in her wet, visibly blood-stained clothing. (FAC ¶ 33.)

On December 5, 2017, Plaintiff filed the instant suit. On January 21, 2018, Plaintiff filed her first amended complaint, asserting the following claims: (1) violation of the Eighth Amendment prohibition against cruel and unusual punishment; (2) violation of the Fourteenth Amendment's equal protection clause; (3) violation of the Fourth Amendment right to be free from unreasonable search and seizure; (4) false imprisonment; (5) the California Bane Act; and (6) negligence. (FAC at 14-16.) The third, fourth, and fifth claims are brought against the Oakland Defendants only; although not clear, it appears the first and second claims are brought against the Alameda Defendants only, as they concern allegations related to when Plaintiff was in Santa Rita jail. (*See* FAC ¶¶ 71-81.) The negligence claim is brought against both the Oakland Defendants and Alameda Defendants. (*See* FAC ¶ 89.) Additionally, again while it is unclear, it appears that the first, second, and possibly sixth claim (with respect to the Alameda Defendants) are brought as a class action, on behalf of all female arrestees placed in the custody of the Alameda County Sheriff's Office from December 26, 2016 to the filing date of this lawsuit. (FAC ¶¶ 62-65.)

Notably, Plaintiff asserts in her lawsuit that approximately six months prior to the

3

December 25, 2016 event, Defendants County of Alameda and Alameda County Sheriff's Office settled a case with "similar allegations" regarding the conditions of confinement and failure to provide feminine hygiene products. (FAC ¶ 42.) Defendants purportedly agreed to adopt policies and practices to remedy the complaints. Plaintiff did not, however, explain what these agreed to policies and practices entailed.

On April 17, 2018, the Oakland Defendants filed a motion to dismiss the claims against them. On April 30, 2018, Plaintiff filed a joint motion for leave to amend the complaint and opposition to the Oakland Defendants' motion to dismiss. On May 7, 2018, the Oakland Defendants filed their reply. (Oakland Defs.' Reply, Dkt. No. 30.)

On April 27, 2018, the Alameda Defendants filed a motion to dismiss the claims against them. On May 13, 2018, Plaintiff late-filed her opposition.[1] (Plfs.' Opp'n, Dkt. No. 31.) The opposition included a declaration by Plaintiff's counsel, which provided further information regarding the policies adopted as a result of the settlement of the prior case. (Huang Decl. ¶ 2, Dkt. No. 31-1.) Plaintiff's counsel stated that "[D]efendant Alameda County Sheriff's Office agreed to develop new policies," one of which was "Detentions & Corrections § 15.03, in which paragraphs 3, 4 and 5 were added to Section F." (Huang Decl. ¶ 2.) Paragraph 3 provides that "[a]s soon as practical after a female inmate is admitted into the secure portion of ITR, a female deputy shall advise her that, if she is menstruating, she may request that any deputy provide her with feminine hygiene products and that all reasonable efforts will be made to comply with that request within thirty (30) minutes." (Huang Decl., Exh. A at ¶ F.3.) Paragraph 4 concerns storage of feminine hygiene products, and paragraph 5 requires that "[e]ach holding cell in ITR regularly used to house female inmates shall be equipped with a means by which inmates can dispose of used feminine hygiene products in a hygienic manner." (Huang Decl., Exh. A at ¶¶ F.4-F.5.) On May 18, 2018, the Alameda Defendants filed their reply. (Alameda Defs.' Reply, Dkt. No. 32.)

---

[1] The Alameda Defendants request that the Court disregard Plaintiff's opposition because it was not timely filed. (Alameda Defs.' Reply at 2, Dkt. No. 32.) For purposes of this motion, the Court finds it more efficient to consider Plaintiff's opposition on the merits. In the future, Plaintiff **must** comply with the Northern District of California's local rules, including with respect to deadlines.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

omitted).

## III. DISCUSSION

### A. Oakland Defendants' Motion to Dismiss

#### i. Fourth Amendment Violation and False Imprisonment

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). Similarly, "[t]o prevail on h[er] § 1983 claim for false arrest and imprisonment, [Plaintiff] would have to demonstrate that there was no probable cause to arrest h[er]." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

Here, the Oakland Defendants argue that Plaintiff's Fourth Amendment and false imprisonment claims fail "because the complaint lacks *any* allegations suggesting that [the Oakland] Defendants lacked probable cause to arrest her." (Oakland Defs.' Mot. at 5.) The Oakland Defendants rely on Plaintiff's allegations that when interviewed by the officers, Mr. Turano claimed that Plaintiff had harassed him, used his camera without permission, and violated a domestic violence restraining order by coming within three feet of him. (*Id.*; *see also* FAC ¶ 21.) Further, the Oakland Defendants point to California Penal Code § 836(c)(1), which states that "[w]hen a peace officer is responding to a call alleging a violation of a domestic violence protective or restraining order . . . the officer shall . . . make a lawful arrest of the person without a warrant and take that person into custody whether or not the violation occurred in the presence of the arresting officer." Thus, the Oakland Defendants contend that they were required to arrest Plaintiff once they had probable cause to believe she had violated the restraining order. (Oakland Defs.' Mot. at 6.)

Plaintiff does not dispute the Oakland Defendants' authority, nor does she assert that her complaint as pled is adequate. Instead, Plaintiff requests leave to amend her complaint, to add allegations that would dispute whether there was probable cause. (Plf.'s Mot. to Amend at 4-5.) Specifically, Plaintiff seeks to add allegations that she did not violate the restraining order by coming within three yards of Mr. Turano, or take any other action to violate the restraining order.

6

(*Id.* at 4.) Plaintiff would also assert that the officers did not see anything that would provide probable cause for the arrest, and did not write anything in their report that Plaintiff acted in any matter which was in violation of the restraining order. (*Id.*) Thus, plaintiff requests that the Court deny the motion to dismiss. (*Id.* at 8.)

The Court finds that the Fourth Amendment and false imprisonment claims must be dismissed because, as alleged, there was probable cause to arrest. The Court also finds that further amendment is futile. Even if Plaintiff asserts that she did not, in fact, violate the restraining order and that the officers did not see her do so, such allegations are insufficient to show no probable cause in light of Mr. Turano's statement to the police that Plaintiff did violate the restraining order, thus triggering the requirement to arrest per California Penal Code § 836(c)(1). At the hearing, Plaintiff proposed alleging that the decision to send officers to the Turano residence was an abuse of discretion; this, however, is irrelevant to the actions taken by the officers once they were dispatched. The Court therefore finds that leave to amend is not appropriate.

### ii. Bane Act Claim

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Cornell v. City & Cty. of S.F.*, 17 Cal. App. 766, 791-92 (2017). Thus, "to state a claim under the Bane Act, a plaintiff must allege '(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion.'" *Inman v. Anderson*, 294 F. Supp. 3d 907, 925 (N.D. Cal. 2018) (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

For the same reasons the § 1983 claims must be dismissed, so must the Bane Act claim. As discussed above, the operative complaint fails to allege an unlawful arrest or false imprisonment claim because, as pled, the Oakland Defendants had probable cause to arrest Plaintiff for violating the restraining order. Thus, Plaintiff has failed to establish that there was interference or attempted interference with a state or federal constitutional or legal right.

7

Accordingly, the Bane Act claim is dismissed without leave to amend.

### iii. Negligence

Under California law, to prove negligence a plaintiff must plead and prove: (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) a causal relationship between defendant's negligence and plaintiff's damages. *Palm v. United States*, 835 F. Supp. 512, 520 (N.D. Cal. 1993). Defendants argue that Plaintiff has failed to provide factual allegations that satisfy any of these elements. (Oakland Defs.' Mot. to Dismiss at 8.) Plaintiff responds by identifying facts regarding injury and causation -- specifically that as a result of her arrest, she was detained at Santa Rita and subjected to the complained of cell conditions -- but does not identify what facts explain the Oakland Defendants' legal duty of care or the breach of that duty. (Plf.'s Mot. to Amend at 7.) Again, Plaintiff has failed to establish a Fourth Amendment violation or false imprisonment claim because Plaintiff cannot demonstrate that her arrest was made without probable cause, and the City of Oakland is not responsible for the conditions of Plaintiff's jail cell. Thus, the negligence claim is dismissed without leave to amend.

### iv. Motion to Amend

As discussed above, the Court finds that Plaintiff cannot amend the complaint to establish that the Oakland Defendants lacked probable cause to arrest. As all of her claims against the Oakland Defendants are based on her arrest, the Court concludes that amendment is futile. Therefore, the Court DENIES Plaintiff's motion to amend.

## B. Alameda Defendants' Motion to Dismiss

### i. Cruel and Unusual Punishment

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1067-68 (9th Cir. 2016). Here, Plaintiff asserts that Defendants have violated her and the proposed class's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. (FAC ¶ 73.)

As an initial matter, it appears Plaintiff can only bring a claim under the Fourteenth

1 Amendment because she was a pre-trial detainee. Thus, to the extent Plaintiff's claim is based on the Eighth Amendment, her claim is dismissed.

The Alameda Defendants raise two arguments for why Plaintiff's cruel and unusual punishment claim should be dismissed. First, the Alameda Defendants argue that Plaintiff has failed to make a subjective showing of deliberate indifference. (Alameda Defs.' Mot. to Dismiss at 6; Alameda Defs.' Reply at 2.) Plaintiff counters that the relevant standard is objective, not subjective. (Plf.'s Opp'n at 3.) Second, the parties dispute whether Plaintiff has made sufficient allegations in support of her cruel and unusual punishment claim.

      a. Subjective or Objective Standard

To bring a claim for cruel and unusual punishment under the Eighth Amendment, an inmate must demonstrate that the prison official knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. In other words, the official must demonstrate a *subjective awareness* of the risk of harm." *Castro*, 833 F.3d at 1068 (internal quotations omitted). In *Clouthier v. County of Contra Costa*, the Ninth Circuit concluded that there was "a single 'deliberate indifference' test for plaintiffs who bring a constitutional claim--whether under the Eighth Amendment or the Fourteenth Amendment," and that "this standard incorporate[d] the *subjective* test." *Id.*; *see also Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1236 (9th Cir. 2010). In *Kingsley v. Hendrickson*, however, the Supreme Court considered whether a pretrial detainee asserting excessive force had to show that the officers were subjectively aware that their use of force was unreasonable, or only that their use of force was objectively unreasonable. 135 S. Ct. 2466, 2470 (2015). The Supreme Court concluded that the "relevant standard is objective, not subjective." *Id.* at 2472. Accordingly, the Ninth Circuit has since found that *Kingsley* essentially rejected *Clouthier*'s conclusion "that there exists a single 'deliberate indifference' standard applicable to *all* § 1983 claims, whether brought by pretrial detainees or by convicted prisoners." *Castro*, 833 F.3d at 1069.

In *Gordan v. County of Orange*, the Ninth Circuit found that the standard of review for violating a pretrial detainee's right to adequate medical care was "one of objective indifference, not

subjective indifference." 888 F.3d 1118, 1120 (9th Cir. 2018). The Ninth Circuit reasoned that § 1983 did not include a state-of-mind requirement, the medical care claim arose under the Fourteenth Amendment rather than the Eighth Amendment, and *Kingsley* was not limited to claims regarding force but governmental actions, generally. *Id.* at 1124. The Ninth Circuit also explained that "the Supreme Court has treated medical care claims substantially the same as other conditions of confinement violations including failure-to-protect claims." *Id.* Finally, the Ninth Circuit found that it had "long analyzed claims that government officials failed to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way." *Id.* Thus, the Ninth Circuit concluded that "claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Id.* at 1124-25 (internal quotation omitted).

At the hearing, Plaintiff clarified that she is bringing a conditions of confinement claim. The Ninth Circuit has held that a pretrial detainee's medical care claim and a failure to protect claim are evaluated under an objective deliberative indifference standard. *Gordan*, 888 F.3d at 1124-25; *Castro*, 833 F.3d at 1069-70. Medical care and failure to protect claims, in turn, fall under the ambit of conditions of confinement claims generally, which would support applying the objective deliberative indifference standard to conditions of confinement claims. *See id.* at 1124; *see also Osegueda v. Stanislaus Cty. Pub. Safety Ctr.*, Case No. 1:16-cv-1218-LJO-BAM, 2017 WL 202232, at *5 (E.D. Cal. Jan. 17, 2017) ("the Ninth Circuit has indicated that claims brought by pre-trial detainees for inhumane conditions of confinement under the Fourteenth Amendment should be evaluated under the objectively unreasonable standard articulated by the Supreme Court in *Kingsley*"). The Ninth Circuit's reasoning in *Gordan* also applies to conditions of confinement claims; § 1983 does not include a state-of-mind requirement, the claim arises under the Fourteenth Amendment rather than the Eighth Amendment, and *Kingsley* was not limited to force claims. *See Gordon*, 888 F.3d at 1124; *see also Castro*, 833 F.3d at 1069-70. The Court, therefore, concludes that Plaintiff is not required to plead facts demonstrating subjective intent to punish.

          b. Sufficient Facts

10

The parties next dispute whether Plaintiff has adequately pled her cruel and unusual punishment claim. The Court concludes that Plaintiff's pleadings are sufficient.

"[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004). The Ninth Circuit has explained:

> the determination of whether a particular condition or restriction imposes punishment in the constitutional sense will generally turn on whether an alternate purpose is reasonably assignable: if a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees . . . .

*Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (internal quotation omitted). Moreover, the Ninth Circuit has concluded that "[a]lthough the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying the minimum civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (internal quotation omitted). Thus, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Id.* As to the rights of pre-trial detainees under the Fourteenth Amendment's due process clause, "the guarantees of the Eighth Amendment provide a *minimum standard of care* for determining their rights . . . ." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003).

Here, Plaintiff has alleged that female pre-trial detainees are required "to stay in cold, filthy, unhygienic cells, strewn with garbage, in which human feces and bodily fluids are on the walls, floors and seats." (FAC ¶ 74.) Female pre-trial detainees are also required "to bleed over their clothing, to bleed over benches and seats; to wear, [sic] wet, bloody clothing; to wear wet blood clothing for long periods of time and to be in public with such clothing on." (FAC ¶ 75.) Additionally, female pre-trial detainees are not provided "a clean place to sit, access to hygiene supplies and the ability to wash one's hands and a minimum of cleanliness." (FAC ¶ 76.) Plaintiff

also alleges that there are no valid penological reasons for these conditions. (FAC ¶¶ 74-76.) The Court concludes that, at the pleading stage, this is adequate to allege a Fourteenth Amendment cruel and unusual punishment claim based on conditions of confinement.

### ii. Equal Protection

Plaintiff brings a § 1983 claim under the Fourteenth Amendment's Equal Protection Clause, based on the failure to provide feminine hygiene products and the means to maintain personal cleanliness. (FAC ¶ 80.) "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The Alameda Defendants argue that Plaintiff has failed to allege any facts demonstrating that the Alameda Defendants acted with discriminatory intent. (Alameda Defs.' Mot. to Dismiss at 6-7.) The Court agrees.

Plaintiff argues that there is intentional discrimination because "[t]he requirement of menstrual pads is a unique female requirement." (Plf.'s Opp'n at 5.) By failing to provide menstrual pads, women are required to bleed over their clothes and sit in wet, bloody clothes. (*Id.*) These allegations, however, do not go to whether the Alameda Defendants' failure to provide feminine hygiene products was the result of discriminatory intent. Simply because a female has gender-specific requirement does not mean that the failure to accommodate those needs is automatically the result of an intent to discriminate based on gender.[2] Plaintiff provides no authority to the contrary.

Accordingly, the Court dismisses Plaintiff's equal protection claim with leave to amend.

### iii. Negligence

Plaintiff also brings a negligence claim. The Alameda Defendants argue that Plaintiff's

---

[2] For example, if the Alameda Defendants failed to provide anything required for hygiene to all pre-trial detainees, this would suggest that the failure to provide feminine hygiene products is not based on gender discrimination, but a systemic failure. If, however, the Alameda Defendants did provide hygiene products to men -- regardless of whether it was a unique male requirement or not -- but not to women, discriminatory intent could be inferred. As currently pled, however, there is not enough to demonstrate discriminatory intent.

12

negligence claim must be dismissed because it is not clear what injury she suffered, what was the wrongful conduct, and what was the duty owed. (Alameda Defs.' Mot. to Dismiss at 7.) Plaintiff counters that she is not required to satisfy code pleading requirements, and need only provide a "short and plain statement" of her claim. (Plf.'s Opp'n at 5.)

The Court finds that Plaintiff fails to give the Alameda Defendants sufficient notice of what specific facts her negligence claim is based on. As pled, it is not clear if her negligence claim is based off the unhygienic cell conditions, the failure to provide the feminine hygiene products when requested, the failure to have Plaintiff interviewed by a nurse, the failure to have adequate checks of the cell, the failure to clean, the search without privacy, and/or a different issue. Instead, Plaintiff only states that "Defendants have a duty of care to plaintiffs to ensure that defendants did not cause unnecessary or unjustified harm to plaintiffs, and a duty of care to hire, train, supervise and discipline [Oakland] and [Alameda] officers so as to not cause harm to plaintiff and class members and to prevent violations of their constitutional, statutory and common law rights." It is also not clear what duty Plaintiff alleges was owed to her, and what injury was caused. For example, while Plaintiff points to the fact that she had to endure being in bloody clothes, this injury would appear to be related to the failure to provide the feminine hygiene products when requested; it is not clear this injury would be caused by the unhygienic cell conditions. Accordingly, Plaintiff's negligence claim is dismissed with leave to amend.

#### iv. Immunity

In the alternative, the Alameda Defendants argue that the individually named Alameda Defendants are entitled to qualified immunity, Defendant Alameda County is immune under *Monell*, and that various California Government Code provisions immunize the Alameda Defendants from Plaintiff's negligence claim.

##### a. Supervisory Liability

In general, "[a] defendant may be held liable as supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation omitted). The breach of

duty must be the proximate cause of the plaintiff's injury. *Id.* Additionally, the required "causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation and modifications omitted). Furthermore, a supervisor can be liable "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (internal quotation omitted).

Here, the Alameda Defendants contend that the individual Alameda Defendants are entitled to qualified immunity because Plaintiff fails to allege that they were personally involved in the alleged deprivations, that they knowingly endorsed the misconduct, or how their failure to train caused their subordinates to cause the alleged violations. (Alameda Defs.' Mot. at 8.) Plaintiff responds that she alleged that Defendant Ahren is the Sheriff, Defendant Keteles is the Assistant Sheriff, Defendant Madigan is a Commander, and Defendant Skoldqvist is a Captain and the officer in charge of Santa Rita Jail. (Plf.'s Opp'n at 6; *see also* FAC ¶¶ 35-38.) Plaintiff further asserts that each of these individuals had final policy-making authority. (FAC ¶¶ 35-38.)

As an initial matter, this is not a matter of qualified immunity; the Alameda Defendants are arguing that Plaintiff has failed to plead facts necessary to demonstrate supervisory liability. This is therefore a pleading issue. The Court concludes, however, the Plaintiff has failed to allege sufficient facts demonstrating supervisory liability. The Ninth Circuit's decision in *Starr v. Baca* is illustrative. There, the plaintiff alleged that the supervising defendant knew or should have known of the prisoner issues where that defendant had: (1) received a "findings letter" from a Department of Justice investigation finding a continued and serious pattern of constitutional violation including inmate on inmate violence, (2) received weekly reports from his subordinates reporting deaths and injuries in the jail, (3) been part of a memorandum of understanding to correct constitutional violations to which inmates were being subjected to, (4) received repeated notice of numerous violations regarding failure to supervise from his in-house lawyers (with specific incidents listed in the complaint), (5) was named as a defendant in a suit where a deputy

14

falsified information that led to the beating of a prisoner by other prisoners, and (6) received a report about inmate abuse from special counsel. *Starr*, 652 F.3d at 1209-12. In short, the Plaintiff did not simply allege that the defendant should have known of the constitutional violations by virtue of his position, but listed facts regarding specific incidents and reports that put him on notice.

Here, in contrast, Plaintiff only alleges the positions of the individual Alameda Defendants and that they have final policy-making authority regarding the training, supervision, and discipline of deputies and employees as it relates to treatment, custody, and care of individuals placed in Santa Rita jail. She does not allege any facts demonstrating that they made policy related to the events at issue. *Compare with Brown v. Contra Costa Cty.*, Case No. 12-cv-1923-PJH, 2013 WL 5422947, at *8 (N.D. Cal. Sept. 27, 2013) (finding that the plaintiff's allegations that the individual defendants were policymakers at the time of their conduct were insufficient because the plaintiff did "not plead any facts showing that they ratified a subordinate's unconstitutional conduct, or any facts showing they had final authority to establish municipal policy with respect to a specific action ordered"). Plaintiff also does not allege facts showing that these individuals knew of the conditions complained of in this case. While Plaintiff does allege that Alameda County had a "significant history of problematic treatment of female inmates, particularly with housing female inmates in unsanitary and garbage filled cells which pose a health hazard, and failing to provide for the feminine hygiene needs of female inmates," Plaintiff does not allege specific facts showing that the individual Alameda Defendants were aware of these conditions. (*See* FAC ¶ 42.) Plaintiff also points to the prior lawsuit, but again, does not allege facts that the individual Alameda Defendants were involved in the suit, the settlement of the suit, or the implementation of the policies that were the result of the settlement. (*See* FAC ¶ 43.) Without more, Plaintiff has failed to establish supervisory liability, and thus the claims against the individual Defendants are dismissed with leave to amend to, if possible, plead facts demonstrating knowledge or personal involvement with the policies and training at issue.

      b. *Monell* Liability

Next, the Alameda Defendants argue that Defendant County of Alameda is immune under

*Monell* because Plaintiff fails to specify a policy or practice to support municipal liability. (Alameda Defs.' Mot. at 9.) Again, this is a pleading issue, not an immunity issue. Plaintiff responds that she is not required to plead anything more specific, relying on *Karim-Panahi v. Los Angeles Police Department*, where the Ninth Circuit found: "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." 839 F.2d 621, 624 (9th Cir. 1988) (internal quotation omitted).

Plaintiff is mistaken. *Karim-Panahi* pre-dates the Supreme Court's rulings in *Iqbal* and *Twombly*, and numerous courts in this district have concluded that "such conclusory allegations no longer suffice[,] and a plaintiff is required to state facts sufficient to state a claim that is plausible on its face." *Anakin v. Contra Costa Reg'l Med. Ctr.*, 16-cv-161-MEJ, 2016 WL 1059428, at *3 (N.D. Cal. Mar. 17, 2016). Indeed, "[t]he Ninth Circuit has made clear that claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*: (1) the complaint 'may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying fact to give fair notice and to enable the opposing party to defend itself effectively;' and (2) the 'factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *La v. San Mateo Cty. Transit Dist.*, Case No. 14-cv-1768-WHO, 2014 WL 4632224, at *7 (N.D. Cal. Sept. 16, 2014) (quoting *Starr*, 652 F.3d at 1216). Thus, Plaintiff must, for example, identify the policies or customs at issue, and explain why they were deficient. *E.g.*, *Howard v. Contra Costa Cty.*, Case No. 13-cv-3626-NC, 2014 WL 824218, at *14 (N.D. Cal. Feb. 28, 2014) (finding that allegations that the county failed to instruct, supervise, control, and/or discipline employees to refrain from retaliating against the plaintiff were legal conclusions that failed to "identify what the training practices were, or how they were deficient").

While Plaintiff alleges that a lawsuit was filed against Defendant Alameda County based on similar allegations, and that Defendant Alameda County agreed to adopt policies and practices to remedy the complaints, it is unclear how this relates to *Monell* liability. At best, the lawsuit and settlement show that Defendant Alameda County was aware of the issue, but it does not

16

demonstrate that there was a custom, policy, or practice of failing to provide feminine hygiene products. Instead, the lawsuit resulted in a policy or practice that apparently required the provision of feminine hygiene products, which may not have been complied with in full in this instance. Plaintiff does not, however, allege facts that the failure to comply with the policy or practice in this instance was pursuant to a custom, policy, or practice.

Accordingly, the Court finds that Plaintiff has failed to adequately plead *Monell* liability. Plaintiff, however, is given leave to amend.

### c. Government Code Immunity

Finally, the Alameda Defendants argue that they have immunity against Plaintiff's negligence claim under various provisions of the California Government Code. (Alameda Defs.' Mot. to Dismiss at 9.) The Court need not decide this issue because as discussed above, Plaintiff's negligence claim is not adequately pled and must be dismissed for that reason.

## IV. CONCLUSION

For the reasons stated above, the Oakland Defendants' motion to dismiss is GRANTED without leave to amend, and Plaintiff's motion to amend -- which was directed only at the claims against the Oakland Defendants -- is DENIED because amendment is futile. The Alameda Defendants' motion to dismiss is GRANTED with leave to amend. While Plaintiff has pled sufficient facts for a Fourteenth Amendment conditions of confinement claim, Plaintiff has not sufficiently pled facts establishing liability as to any of the named Defendants. Plaintiff may file an amended complaint within thirty days of the date of this order, consistent with this order.

IT IS SO ORDERED.

Dated: June 20, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge