LAW OFFICE OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
499 14th Street, Suite 300
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile:  (510) 444-6698

Attorneys for Plaintiff
Cynthia Turano

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CYNTHIA N. TURANO, individually and behalf of others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>ALAMEDA COUNTY AND ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, TARA RUSSELL as DOE 1, and DOES 2-100.<br><br>Defendants. | Case No. 4:17-cv-06953-KAW<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. This is an action for equitable relief and for redress for the violation of rights guaranteed to the plaintiff, individually and on behalf of others similarly situated, by state and federal laws, including: (a) damages for deprivations by defendants acting under color of State law of plaintiff's rights, privileges and immunities guaranteed by the First, and Fourteenth Amendments to the United States Constitution pursuant to 42 USC 1983 and 1988 while women are under the custody and control of County of Alameda and Alameda County Sheriff's Office, on behalf of plaintiff individually and as representative of all females where were similarly situated.

**JURISDICTION & VENUE**

2. The jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 1983 et seq.; 28 U.S.C. §§ 1331 and 1343(a). Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. ¬ß 1367. Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201 and 2202, and 42 U.S.C. §1983.

3. Venue is proper in the Northern District of California as the events complained of occurred in this district.

4. Plaintiffs have filed administrative claims with Alameda County in compliance with California Government Code §§910, et seq. These claims have been denied expressly or by operation of law.

**INTRADISTRICT ASSIGNMENT**

5. The claims alleged herein arose in the County of Alameda, State of California. Therefore, venue and assignment, under 28 U.S.C. ¬ß 1391(b), lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

**THE PARTIES**

6. Plaintiff, CYNTHIA TURANO is a female resident of Alameda County and a licensed and practicing architect.

7. Defendant COUNTY OF ALAMEDA is a "public entity" within the definition of Cal. Gov. Code §811.2.

8. Defendant ALAMEDA COUNTY SHERIFF'S OFFICE is a "public entity" within the definition of Cal. Gov. Code ¬ß 811.2.

9. Defendant GREGORY J. AHERN, at all material times herein was the Sheriff for Defendants Alameda County and Alameda County Sheriff's Office, acting within the scope of that agency or employment and under color of state law. Defendant is sued in his official capacity.

10. Defendant BRETT M. KETELES, at all material times herein was the Assistant Sheriff for Alameda County in charge of the Detentions and Corrections Unit Defendants Alameda County and Alameda County Sheriff's Office, acting within the scope of that agency or employment and under color of state law. Defendant is sued in his official capacity.

11. Defendant TOM MADIGAN, at all material times herein was the Commander in charge of the Detentions and Corrections Unit, for Defendants Alameda County and Alameda County Sheriff's Office, acting within the scope of that agency or employment and under color of state law.

Defendant Madigan was in charge of the two Alameda County jails, Glen Dyer and Santa Rita, and was so in charge of Santa Rita Jail on December 26, 2016.  Defendants D. SKOLDQVIST, at all material times herein was the responsible officer for Santa Rita Jail, for Defendants Alameda County and Alameda County Sheriff's Office, acting within the scope of that agency or employment and under color of state law.   TARA RUSSELL at all times herein was captain for Defendants Alameda County and Alameda County Sheriff's Office, acting within the scope of that agency or employment and under color of state law and assigned to Detentions and Corrections with responsibility for Santa Rita Jail.  Defendants MADIGAN, SKOLDVIST and RUSSELL are sued in their individual capacity.

12.      Defendants DOES 2 through 100 , are and/or were agents or employees of Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, and acted within the scope of that agency or employment or under color of state law.   The true and correct names of Doe 2 through 100 are not now known to Plaintiff who sue such Defendants by their fictitious names Plaintiff will substitute the true and correct names of Defendants Does 2 through 100 when ascertained.

**GENERAL ALLEGATIONS**

13.      On Christmas Day, DECEMBER 25, 2016, at 1:21 p.m. in the afternoon, Edward J. Turano phoned in a complaint to the Oakland Police Department alleging that his wife Cynthia Turano had violated a temporary restraining order by taking a camera that he claimed belonged to him.  E. Turano stated that Cynthia Turano still resided in the house.  There was no report of physical contact nor of violence.

14.      Oakland Police Department responded to this call by dispatching three uniformed and armed police officers, defendants Duran, Adaya and Tloyao; over twelve (12) hours later after 1:00 a.m., to 311 Gravatt Drive, Oakland, CA, a single-family residence.

15.      At the residence, these officers interviewed Edward Turano who alleged that he was "being" harassed by plaintiff; that in the afternoon, plaintiff had "used" his camera without his permission, and had violated a domestic violence restraining order by coming within three (3) feet of E. Turano's person. The camera had been returned by 2:30 pm the prior afternoon and put back into place, and said officers were so informed of the camera's return.

16.      At the time the three defendants Duran, Adaya and Tloyao arrived at 311 Gravatt Drive, after 1 a.m. in the morning, plaintiff was asleep in her pajamas in her bed, in her bedroom,

separate from Edward Turano.  Plaintiff was not engaged in any activity other than sleeping, and was not interacting with E. Turano in any manner.  The camera was securely placed in its regular place.

17.     These officers did not witness any action, any movement or any speech by Cynthia Turano before they chose to wake her up, in her room.  Oakland police officers woke plaintiff up, handcuffed her, and arrested her for violation of a restraining order, prohibiting her from harassing Edward Turano.  On Christmas Day night. Plaintiff was placed, handcuffed in the back of Ofc. Tioyao's police car, and driven to Santa Rita Jail for incarceration.

18.     The District Attorney declined to file charges.

19.     At Santa Rita Jail, defendant Tloyao transferred Plaintiff Cynthia Turano into the custody and control of the Alameda County Sheriff's Office.  First Plaintiff was placed in a cell, which had fecal matter spread over the walls and bench. There were two or more old bloody hand print smears.  These hand smears were the hue of dark reddish brown, and dried.   These prints were on the wall.  The wall also had what looked like mucus and blood, perhaps it was spit that contained blood.  There were no less than on three medical pads with human hair stuck to the device, on the wall. The sign in the cell with the contact numbers for assistance had been scratched so badly, the phone numbers were illegible.

20.     Plaintiff Turano was then taken out of this first cell by a female deputy and searched in the hallway without any privacy screening.  Plaintiff was then placed in another cell and informed that she would be interviewed by a nurse.  This second cell had piles of used and partially rotting food on either side of a long bench.  The food smelled and appeared old due to discoloration and odor.  Some of this food was partially eaten.  There were stains of dried fluids on the walls and benches, but the original identity of these fluids was not ascertainable.  Garbage and used tissue or toilet paper were piled along side the stainless-steel toilet in the room.  There were no trash receptacles in the room.

21.     There was a phone in the cell and next to the phone was a sign with advertisement for bail bondsmen, with all the phone numbers listed.  This sign was the cleanest spot in the entire room.  On the wall above the bench was a sign with phone numbers for help if you were being sexually or physically abused by an officer, but any phone numbers were illegible.  This room was entirely constructed out of cinderblocks and was very cold.   Plaintiff was not provided with adequate clothing or a blanket.

22. After a period of time Plaintiff was interviewed/questioned by a male Santa Rita deputy. Plaintiff informed him that she required feminine hygiene products. She also told this same male deputy that she was not feeling well. She was informed by this male deputy that she would be seen by a nurse. Ms. Turano was not provided with a menstrual pad nor any other feminine hygiene product. She was not seen by a nurse.

23. Ms. Turano was moved to a different holding cell. The cell was filthy and strewn with garbage. Although there were only a few women in this cell, the accumulation of garbage showed that a number of other individuals had been through that cell. There were uneaten and left-over food, food debris, and used medical supplies. The floor and walls had dried human fluids and human discharges on them. Because plaintiff was menstruating and bleeding over her clothes, the blood seeped through her pants and onto the concrete bench. Plaintiff's menstrual blood began to puddle on the bench. Due to this situation, Plaintiff began knocking and banging on the door and window to get help. During a long period of time, Plaintiff never saw a sheriff's deputy pass by. Not a single sheriff's deputy checked the room, not even peering through the glass window. Nor was there any effort by the Alameda County Sheriff's Office to remove the accumulated garbage in the cell or clean the cell.

24. Not a single cell had a trash receptacle. During this period of time, the only humans outside the cell which Plaintiff saw through a glass window in the cell, were individuals in civilian clothing, with identification badges. Although Plaintiff continued to bang on the window and door, these individuals in civilian clothing refused to make eye contact, and instead look away. These individuals did not respond to Plaintiff's distress and request for assistance.

25. Finally, despite hours of banging on the window and door, the only time a sheriff's deputy appeared at plaintiff's cell was when a female deputy opened the door and brought in a third woman. At this time, Plaintiff again requested menstrual pads and the female deputy returned with two pads. By this time, Plaintiff had already bled through her pants. In putting on one of the pads, Plaintiff got blood all over her hands. The cell provided nothing to clean hands with. There was no soap and no paper towels. Plaintiff could only rinse some of the blood off her hands in the drinking fountain, and was forced to wipe her hands off on her clothing.

26. At 9:30 a.m., Plaintiff was escorted to the discharge area, where the Sheriff gave her a bus ticket and a BART ticket. Prior to Plaintiff being taken to the discharge area, all of the garbage in Plaintiff's holding cell was still there. Plaintiff, during the entire time at Santa Rita Jail, did not see

a single cell be cleaned, nor did she see any cleaners, and there had been no effort to remove any garbage or waste food. There was no any means for Plaintiff to clean up the puddle of menstrual blood on the bench, which remained on the concrete bench when she was removed from the cell.

27. After her discharge, Ms. Turano was able to catch a bus to BART, and took BART to Oakland. She traveled on the bus and BART dressed in wet, visibly blood-stained clothing.

28. Plaintiff Turano filed a claim against the City of Oakland, the Oakland Police Department and the individual officers involved. Said claim was dismissed by this Court, without leave to amend on the grounds that the Oakland Police are required by California Penal Code 836(c)(1) to make an arrest when there is a complaint of a violation of a domestic violence protective or restraining order, even if the officers themselves do not witness any of the alleged wrongdoing, and there are no activities at that time indicative of any violation of any protective or restraining order. Therefore, Plaintiff is subject to future arrest based upon the bald and perhaps baseless assertions and complaints of a disgruntled ex-spouse during the course of a divorce proceeding, alleging violation of a general domestic violence protective or restraining order.

**MUNICIPAL & SUPERVISORY ALLEGATIONS**

29. Defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, TARA RUSSELL, D. SKOLDQVIST and DOE 2 to 50's failure to adequately train, supervise, and/or discipline their sheriff deputies and employees have created, fostered, and/or contributed to a callous culture and system where the rights and needs of women placed into care and custody are violated and their needs are not met.

30. Defendant GREGORY AHERN, as the Sheriff, was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail. Defendant AHERN has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE since 1980, and has acted as the Sheriff since 2006, when he was appointed by then outgoing Sheriff Plummer.

31. Defendant BRETT KETELES acting as the Assistant Sheriff, was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees

6

**SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Turano v. Alameda County,* United States District Court, Northern District of California, Case No. 4:17-cv-06953

as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail.  Defendant KETELES has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE since approximately 1991, and has acted as the Acting Sheriff since 2011.

32.     Defendant TOM MADIGAN acting as a Commander ,was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail.  Defendant Madigan has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE for over 20 years.

33.     Defendant D. SKOLDQVIST is acting as a Captain  and the officer in charge of Santa Rita Jail, for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail.  Defendant SKOLDQVIST has been employed by Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE for over 20 years.

34.     Defendant TARA RUSSELL, named as Doe 1, acting as a captain within Detentions and Corrections, was a final policy-making authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail.

35.     Defendants DOE 2 to 50 are/were policy-making authorities based on a delegation of authority for Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE DEPARTMENT as it relates to the training, supervision, and discipline of sheriff deputies and employees as it relates to the treatment, custody and care of individuals placed into the custody of Santa Rita Jail.

36.      Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE DEPARTMENT have a significant history of problems in the conditions of confinement at Santa Rita Jail pertaining to women prisoners, including failure to maintain basic sanitation and hygiene

with unconstitutionally filthy and inadequate jail cells, and the failure to meet the feminine hygiene needs of women prisoners.

40.     Defendants AHERN, KETELES, MADIGAN, RUSSELL and SKOLDQVIST, as long time employees and command staff members of the Alameda County Sheriff's Office, were involved and familiar with the lawsuit, Weills v. , et al v. Gregory J. Ahern, etal., filed on October 27, 2014, 4:14-cv-04773-VC, in Federal District Court, Northern District of California.  The complaint was filed by four women who were arrested and then incarcerated at Santa Rita Jail. The complaint was directed at the conditions in Santa Rita Jail, contained a number of allegations including the fact that the four plaintiffs, all women, were held in cells described as:

> "the cell was filthy. The toilet was over flowing with menstrual blood and feces. The floor was covered with urine, feces, and menstrual blood. There were piles of garbage, including decaying food all over the room. There was dirt and feces on the wall. The smell was overwhelming. One of the women in the room was bleeding, and was bleeding all over her pants because there were no menstrual pads available. Bloodied clothing was on top of the garbage." Weills v. Ahern, Dkt 1. P. 12, L. 12-17
>
> The complaint pled issues including:
>
> "h) whether locking class members in small, filthy, unsanitary, stinking holding cells with rotting food, garbage, walls and floors coated with dried and decomposing organic material, feces and urine and often inoperable toilets is a violation of the 8th amendment.
>
> ….
>
> j) is there a legitimate penological reason to deny class members feminine hygiene supplies so that women have to bleed over themselves, their clothes, the floors and the seating; and, …."  Weills v. Ahern, Dkt. 1 P. 15, l. 12-22.

41.     Defendants AHERN, KETELES, MADIGAN, RUSSELL and SKOLDQVIST participated in resolving the Weills litigation in part through the adoption by defendant ALAMEDA COUNTY SHERIFF'S OFFICE of new policies including the following additions to Alameda County Sheriff's Office Detentions and Corrections Policy and Procedure 15.01  (additions in bold italics):

> 4.     ***As they carry out their assigned duties, ITR deputies will inspect the portions of ITR in which they carry out those duties, including, the interior of all cells being used***

*to hold inmates, throughout* each shift. Any cleanliness or maintenance problems will be immediately corrected. If the problem cannot be corrected, the deputy will notify the ITR Supervisor and appropriate action will be taken.

**5.** *At least once each hour, an ITR deputy shall visually inspect the interior of each holding cell used to hold inmates, inquire if inmates are in need of any supplies and ascertain that the toilet and sink are in proper working order. Any cleanliness or maintenance problems will be immediately corrected. This inspection shall be documented with the time and deputy's initials on a form to be maintained by a deputy designated by the ITR Supervisor for the shift. The ITR Supervisor shall confirm that such inspections have been made and shall note such confirmation at the end of the shift with his or her initials on the form.*

**6.** *At least once every two hours, an ITR deputy shall arrange for an inmate worker to sweep and remove any garbage from each holding cell being used to hold inmates, unless the inmate population in ITR does not permit such cleaning to be performed in a safe and secure manner. Such cleaning shall be documented on a form to be maintained by a deputy designated by the ITR Supervisor for the shift, which shall also be used to document any deferral of the cleaning of a holding cell due to security concerns. All holding cells for which cleaning is deferred due to security concerns shall be cleaned as soon thereafter as safety permits. Any deferral of cleaning of holding cells that carries over to the following shift shall be noted in the ITR Supervisor's end of shift report and shall be addressed in muster of the oncoming shift.*

**7.** *At least once per shift, an ITR deputy shall arrange for all floor and seating surfaces of each holding cell being used to hold arrestees to be wet mopped and for each toilet and sink to be sanitized, unless the inmate population in ITR does not permit such cleaning to be performed in a safe and secure manner. Such cleaning shall be documented on a form to be maintained a deputy designated by the ITR Supervisor for the shift, which shall also be used to document any deferral the cleaning of a holding cell due to security concerns. Any deferral of such a cleaning shall be noted in the ITR Supervisor's end of shift report and shall be addressed in muster of the oncoming shift.*

9

**SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**
*Turano v. Alameda County,* United States District Court, Northern District of California, Case No. 4:17-cv-06953

Amended Policy 15.01 adopted on August 5, 2016.

42. Defendants AHERN, KETELES, MADIGAN, RUSSELL and SKOLDQVIST participated in resolving the Weills litigation in part through the adoption by defendant ALAMEDA COUNTY SHERIFF'S OFFICE of new policies including the following additions to Alameda County Sheriff's Office Detentions and Corrections Policy and Procedure 15.02 by adding paragraphs 7 to 9 below:  (additions in bold italics)

> *7      At least once each hour, an ITR deputy shall visually inspect the interior of each holding cell used to hold inmates, inquire if inmates are in need of any supplies and ascertain that the toilet and sink are in proper working order. Any cleanliness or maintenance problems will be immediately corrected.  This inspection shall be documented with the time and deputy's initials on a form to be maintained by a deputy designated by the ITR Supervisor for the shift.  The ITR Supervisor shall confirm that such inspections have been made and shall note such confirmation with his or her initials on the form.*
>
> *8.      At least once every two hours, an ITR deputy shall arrange for an inmate worker to sweep and remove any garbage from each holding cell being used to hold inmates, unless the inmate population in ITR does not permit such cleaning to be performed in a safe and secure manner.  Such cleaning shall be documented on a form to be maintained by a deputy designated by the ITR Supervisor for the shift, which shall also be used to document any deferral of the cleaning of a holding cell due to security concerns.  All holding cells for which cleaning is deferred due to security concerns shall be cleaned as soon thereafter as safety permits.  Any deferral of cleaning of holding cells that carries over to the following shift shall be noted in the ITR Supervisor's end of shift report and shall be addressed in muster of the oncoming shift.*
>
> *9.      At least once per shift, an ITR deputy shall arrange for all floor and seating surfaces of each holding cell being used to hold arrestees to be wet mopped and for each toilet and sink to be sanitized, unless the inmate population in ITR does not permit such cleaning to be performed in a safe and secure manner.  Such cleaning shall be documented on a form to be maintained a deputy designated by the ITR Supervisor for the shift, which shall also be used to document any deferral the cleaning*

*of a holding cell due to security concerns.  Any deferral of such a cleaning shall be noted in the ITR Supervisor's end of shift report and shall be addressed in muster of the oncoming shift.*

Amended Policy 15.02 adopted on August 5, 2016.

43.   Defendants AHERN, KETELES, MADIGAN, RUSSELL and SKOLDQVIST participated in resolving the Weills litigation in part through the adoption by defendant ALAMEDA COUNTY SHERIFF'S OFFICE of new policies including the following additions to Alameda County Sheriff's Office Detentions and Corrections Policy and Procedure 15.03 by adding paragraphs 3, 4 and 5 to Section F below:  (in bold italics)

***3. As soon as practical after a female inmate is admitted into the secure portion of ITR, a female deputy shall advise her that, if she is menstruating, she may request that any deputy provide her with feminine hygiene products and that all reasonable efforts will be made to comply with that request within thirty (30) minutes.***

***4. A supply of feminine hygiene products shall be stored as close as practical to each holding cell used to house female inmates, and the supply shall be checked by an ITR deputy at least once per shift to ensure that it is adequate to meet the needs of the female inmates in ITR during that shift.***

***5. Each holding cell in ITR regularly used to house female inmates shall be equipped with a means by which inmates can dispose of used feminine hygiene products in a hygienic manner. ITR Deputies will ensure the removal of such disposed feminine hygiene products during the regular cleaning process (defined in P&P 15.01-Sanitation and Hygiene Section III, A. 6&7),***

Amended Policy 15.03 adopted on August 5, 2016.

44.   The changes to Policy 15.03  specifically states that menstrual pads are to be provided to <u>female </u>inmates and in so stating, acknowledges that the need for menstrual pads is a need unique to women, and so the policy changes to 15.03 only apply to women and holding cells used to house female inmates.   Defendants ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY, AHERN, KETELES, MADIGAN, RUSSELL and SKOLDQVIST acknowledges that need by female inmates for menstrual pads are urgent needs and requires immediate and prompt response by mandating that female inmates requests for menstrual pads should be complied with within 30 minutes.

45.     Defendants ALAMEDA COUNTY SHERIFF'S OFFICE, ALAMEDA COUNTY, AHERN, KETELES, MADIGAN, RUSSELL and SKOLDQVIST, as part of its settlement agreement in Weills v. Ahern, also specified that the Detentions and Corrections division of ACSO

"(2)…will …(a) Implement changes to its policies and procedures,…15.01, 15.02

and 15.03 of its Detention and Corrections Policies and Procedures", and ….

(d)  Implement an on the job training program for deputies upon initial assignment

to ITR.  The training program will be designed to ensure deputies have

demonstrated their ability to perform the ITR specific essential duties."

46.     The changes to ACSO Detention and Corrections policies 15.01, 15.02 and 15.03 were adopted on August 5, 2016, approximately four (4) months before plaintiff Turano was arrested and placed into the custody of defendant ALAMEDA COUNTY SHERIFF'S OFFICE at Santa Rita Jail.

47.     Defendants settlement  in Weills v. ACSO acknowledged that defendant ALAMEDA COUNTY SHERIFF'S OFFICE  and ALAMEDA COUNTY had a duty to female inmates, pursuant to California Penal Code §3409, which states that " (a) Any incarcerated person in state prison who menstruates shall, upon request, have access to, and be allowed to use, materials necessary for personal hygiene with regard to their menstrual cycle and reproductive system.

48.     The Alameda County Sheriff's Office has an electronic system, whereby each employee in Detentions and Corrections is electronically sent updated and amended policies and procedures for Detentions and Corrections.  The electronic system has a means whereby each employee in who receives these notifications verifies that he or she has read the updated policy and is familiar with the updated policy.  On information and belief, plaintiff asserts that each of the defendants, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, TARA RUSSELL, and D. SKOLDQVIST, received such an electronic message; that each of these defendants was informed of the updated policy; and that each defendant acknowledged the updated changes to detention and corrections policies 15.01, 15.02 and 15.03.

49.     Furthermore, plaintiffs assert that because the settlement agreement required that defendant ALAMEDA COUNTY and ALAMEDA COUNTY SHERIFF'S OFFICE implement the policy and develop appropriate training program to ensure that deputies have the knowledge and ability to perform these essential duties, including the duties outlined in amended policies 1501, 15.02 and 15.03, that defendants GREGORY AHERN, BRETT KETELES, TOM MADIGAN, TARA

RUSSELL, D. SKOLDQVIST who are the supervisory employees with the specific charge of implementing policy and developing training for mainline deputies, so that sheriff deputies appropriately implement ACSO policies, particularly the policies which would have prevented the injuries and harms specifically alleged in this complaint.

50.     Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, TARA RUSSELL, D. SKOLDQVIST and DOE 2 to 50 knew, based upon the prior complaint of Weills v. Alameda County Sheriff's Office, that there had been previously problems at Santa Rita Jail of filthy cells, and the denial to women inmates of the means for personal hygiene, and were informed that the subordinate employees under their command, including were inadequately trained, supervised, or disciplined resulting from their inadequate policies, customs, or practices.

51.     Defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, TARA RUSSELL, D. SKOLDQVIST and DOE 2 to 50 liability is based upon each defendant's own culpable action or inaction in the failure to implement the policies as amended on August 5, 2018, failure to properly train sheriff deputies to prevent the wrongs pled herein by plaintiff Cynthia Turano, demonstrating callous or reckless indifference to the rights of plaintiff and prospective members of plaintiff class; and said deficient performance of their each individual responsibilities contributed to the deprivation and rights violations pled herein.

**CLASS CLAIM**

52.     The class claim is being submitted on behalf of female arrestees who are placed into the custody of the Alameda County Sheriff's Office from December 26, 2016 to the filing of this lawsuit, and held in the Intake, Transfer and Release (ITR) unit.  The class claim is submitted as to defendants COUNTY OF ALAMEDA and ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, BRETT KETELES, TOM MADIGAN, D. SKOLDQVIST and DOE 1 to

53.     All booking, processing and incarceration of women by the Alameda County Sheriff's Office, for all times stated herein, are done at the Santa Rita Jail.  Every women who is booked or incarcerated is required to be processed through the ITR unit.  Every woman who is incarcerated, including every woman who is incarcerated pretrial because she is unable to post bail or cannot afford bail, must enter and exit Santa  Rita Jail through ITR.  Therefore, the conditions complained

of herein, apply to all women processed by the Alameda County Sheriff's Office during the period of time stated herein.

54.     During the period of time stated herein, Santa Rita Jail incarcerated between 200 and 300 women on a daily basis, and over a period of a year, processed over 9,000 women through its booking process in ITR.

55.     Plaintiff asserts that there are questions of law and fact common to the class, which include but are not limited to:

  a) Whether Alameda County Sheriff's Office, Alameda violate their constitutional duty under the 14th amendment to not administer punishments to individuals who are pre-trial detainees when they hold women in filthy, unsanitary cells with discarded waste food, used medical devices and garbage, and human feces and fluids on benches, walls and floors,

  b) Whether the conditions of Plaintiff and class members confinement in the jail is unreasonable and inhumane; whether Alameda County and the Alameda County Sheriff's Office has policies of deliberate indifference to violations of citizens' constitutional rights by their employees and agents, and whether these events were the product of such policy;

  c) Whether rights of members of the class under the 14th amendment to equal protection are violated when women who request and need feminine hygiene products are not provided with feminine hygiene supplies, nor a means to maintain feminine sanitation and are forced to bleed over their clothing and over the benches and floors of the cells.

  d) Whether Alameda County and the Alameda County Sheriff's Office and their high ranking supervisors failed to properly train and supervise and failed to require compliance with existing policies and procedures, by officers, deputies and other employees who had custody of Plaintiff and class members at Santa Rita Jail Plaintiffs, and failed and refused to adopt appropriate and necessary policies and procedures regarding the treatment and care of Plaintiff and class members;

  e) Whether Alameda County has a practice of failing to provide reasonable and humane conditions of confinement including depriving the class of access to adequate sanitation and feminine and personal hygiene, thereby violating their rights.

56.     Defendants are expected to raise a common defense, including denying that these practices and policies violate constitutional rights.

57.     The claims of the plaintiffs are typical of those of the plaintiff class, as their claims

arise from the same policies, practices, courses of conduct, and conditions of confinement, and their claims are based on the same legal theories as the class' claims. The cause of the named plaintiff's injuries are the same as the cause of the injuries suffered by the rest of the class, namely defendants' policies and practices. Injunctive and/or declaratory relief for the class as a whole is appropriate.

58. Plaintiffs are capable of fairly and adequately protecting the interests of the plaintiff class because plaintiffs do not have any interests antagonistic to the class. Plaintiffs, as well as class members, seek to enjoin the unlawful acts, policies, and practices of the defendants.

59. This action is maintainable as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(1) because the number of class members is numerous and prosecution of separate actions by individuals create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for defendants. Moreover, the prosecution of separate actions by individual members is costly, inefficient, and could result in decisions with respect to individual members of the class that, as a practical matter, would substantially impair the ability of other members to protect their interests.

60. This action is also maintainable as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(2) because defendants' policies and practices that form the basis of this Complaint are generally applicable to all the class members, thereby making class-wide declaratory and

61. Injunctive relief is appropriate. Common questions of law and fact clearly predominate within the meaning of Rule 23(b)(2) as set forth above. Class treatment provides a fair and efficient method for the adjudication of the controversy herein described, affecting a large number of persons, joinder of whom is impracticable.

## FIRST CLAIM FOR RELIEF

Violation of the Fourteenth Amendment Right To Due Process

(42 U.S.C. ¬ß 1983)

62. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 61 of this Complaint.

63. Plaintiffs advance this claim on their own behalf, and on behalf of all class members against all defendants

64. Defendants have deprived and continue to deprive plaintiffs and the class of the minimal civilized measure of life's necessities, and have violated their basic human dignity and their right

to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution for each of the reasons set forth below.

65. There is no valid penological reason to force female pre-trial detainees to stay in cold, filthy, unhygienic cells, strewn with garbage, in which human feces and bodily fluids are on the walls, floors and seats.

66. There is no valid penological reason to force female pre-trial detainees to bleed over their clothing, to bleed over benches and seats; to wear, wet, bloody clothing; to wear wet bloody clothing for long periods of time and to be in public with such clothing on.

67. There is no valid penological reason to deprive female pre-trial detainees of basic human need including access to feminine hygiene supplies, a clean place to sit, access to hygiene supplies and the ability to wash one's hands and a minimum of cleanliness.

68. Defendants and each of their deliberate indifference to these basic human needs violates defendants' own policies and the policies of the civilized world, including the United Nation's Standard Minimums for Treatment of Prisoners, adopted in 1955; the European Union's European Prison Rules adopted in 2006; the Fourteenth Amendment to the United States Constitution; Article 1 §17 of the California Constitution, and California Penal Code ¬ß3409.

## SECOND CLAIM FOR RELIEF

Violation of Equal Protection under Fourteenth Amendment of the United States Constitution

(42 U.S.C. §1983)

69. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 61 of this Complaint.

70. Plaintiffs advance this claim on their own behalf, and on behalf of all class members against all defendants, to the extent relevant, as if fully set forth in this Claim.

71. Plaintiffs and Class Members are women, and only women have the physical biological function of menstruation.  It is this unique female function that requires access to feminine hygiene products, requires the means to maintain female hygiene and personal cleanliness.  Defendants and each of them acknowledged this unique female hygiene need in adopting Detention and Corrections policies that require special provisions including the provision of menstrual pads and feminine hygiene attention for women only, and only for cells that house women.  Where the denial of menstrual pads and menstrual sanitation to men has no effect on men, this denial on women, plaintiff and class members to bleed into their clothes and onto benches, to remain in wet bloody

clothing for long periods of time, to be forced to be in public in bloody clothing, and is defacto sexual discrimination and a violation of the 14th amendment for equal protection.

72.     Defendants' above-described conduct described herein in the General Allegations violated plaintiffs' rights to equal protection under the Fourteenth Amendment to the United States Constitution and Article 1 §7 of the California Constitution.

### THIRD CAUSE OF ACTION

Negligence

73.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 61 Defendants ALAMEDA COUNTY AND ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, and TARA RUSSELL acting under color of state law and as policy-making authorities, owed Plaintiff and potential class members a duty of care and breached that duty by maintaining policies, customs, or practices permitting or deliberately indifferent to, or failed to maintain policies, customs, or practices when it was obvious that they were needed to prevent, the injuries complained of herein.

74.     ALAMEDA COUNTY AND ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, and TARA RUSSELL acting under color of state law and as policy-making authorities, owed Plaintiff and potential class members a duty specified by State law, including Penal Code 3409, and breached that duty by maintaining policies, customs, or practices permitting or deliberately indifferent to compliance with State Code; or failed to maintain policies, customs, or practices when it was obvious that they were needed to prevent, the injuries complained of herein.

75.     Defendants ALAMEDA COUNTY AND ALAMEDA COUNTY SHERIFF'S OFFICE, are indirectly and vicariously liable, through the principles of respondeat superior, for injuries proximately caused by acts or omissions of their employees acting within the scope of their employment.

76.     The above-described acts and omissions of defendants breached the duty of care defendants owed to plaintiff and potential class members.

77.     As a direct and proximate result of Defendants ALAMEDA COUNTY AND ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, and TARA RUSSELL and DOE 2 to 100's actions and inactions, Plaintiff Cynthia Turano and putative class members suffered injuries entitling them to receive

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Turano v. Alameda County*, United States District Court, Northern District of California, Case No. 4:17-cv-06953

compensatory damages against Defendants ALAMEDA COUNTY AND ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, and TARA RUSSELL and DOE 2 to 100.

## REQUISITES FOR RELIEF

78. Plaintiffs are informed and believe that the violations of the plaintiffs' constitutional and lawful rights complained of herein were caused by customs, policies, directives, practices, acts and omissions of authorized policy makers of the defendants COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S OFFICE including defendants GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, TARA RUSSELL and of the ACSO who encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein. Said customs, policies and practices include, but are not limited to wrongful arrests without probable cause, the failure to maintain adequate policies, and to adequately train, supervise and control OPD officers concerning response to and ACSO deputies concerning the policing of demonstrations and other expressive activities with respect to crowd control, crowd dispersal and the constitutional and statutory limitations on arrests and imprisonment.

79. As a direct and proximate result of the conduct of defendants described herein, the named individual plaintiff has been denied her constitutional, statutory and legal rights as stated below, and have suffered general and special damages, including but not limited to, mental and emotional distress, pain, fear, humiliation, embarrassment, discomfort, and anxiety and other damages in an amount according to proof.

80. Defendants' policies, practices, customs, conduct and acts alleged herein have resulted and will continue to result in irreparable injury to plaintiff, including but not limited to violations of her constitutional and statutory rights.  Plaintiff and putative class members have no plain, adequate or complete remedy at law to address the wrongs described herein.  The plaintiff could again find herself the subject of a false and baseless criminal accusation and she and class members could again find themselves intend in the future subject to being placed in an Alameda County jail. Defendants' conduct described herein has created fear, anxiety and uncertainty among plaintiffs with respect to their present and future constitutional rights. Plaintiffs therefore seek injunctive relief from this court, to ensure that plaintiffs and persons similarly situated will not

suffer violations of their rights from defendants' illegal and unconstitutional policies, customs and practices as described herein.

81. Plaintiffs also seek injunctive relief in the form of an order requiring that defendants seal and destroy any records derived from plaintiff's' arrest, including fingerprints, photographs, and other identification and descriptive information, all information collected from the plaintiff class, including said information disseminated to other entities and agencies and that all such disseminated records be collected and destroyed.

82. An actual controversy exists between plaintiffs and defendants in that plaintiffs contend that the policies, practices and conduct of defendants alleged herein are unlawful and unconstitutional, whereas plaintiffs are informed and believe that defendants contend that said policies, practices and conduct are lawful and constitutional. Plaintiffs seek a declaration of rights with respect to this controversy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CYNTHIA TURANO and the class she represents prays for relief as hereunder appears.

1. For an order certifying the class defined herein pursuant to Federal Rules of Civil Procedure Rules 23(a) and 23(b);

2. For an award of declaratory and injunctive relief, enjoining and restraining Defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, D. SKOLDQVIST, TARA RUSSELL, DOES 2-100 from engaging in, continuing or repeating the policies, customs, or practices complained of herein;

3. For an award of compensatory, general, and special damages against Defendants according to proof at trial;

4. For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §1988, Cal. Code Civ. Proc. § 1021.5, or any and any other statute as may be applicable;

6. For the Court to retain jurisdiction of this case until defendants have fully complied with the orders of this Court; and

7. For an award of any other further relief, as the Court deems fair, just, and equitable.

///
///
///

**JURY TRIAL DEMAND**

A JURY TRIAL IS DEMANDED on behalf of Plaintiff Cynthia Turano and members of the class.

Dated: July 20, 2018					Respectfully Submitted,

							LAW OFFICES OF YOLANDA HUANG


							By:_____
								YOLANDA HUANG
								Attorney for Plaintiff C. Turano and
								Members of the Class