UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA N. TURANO, <br> Plaintiff, <br> v. <br> COUNTY OF ALAMEDA, et al., <br> Defendants. | Case No. 17-cv-06953-KAW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO STRIKE** <br><br> Re: Dkt. Nos. 38, 39 |

Plaintiff Cynthia Turano filed the instant class action, bringing constitutional and state claims related to her experience while in the custody of Defendant Alameda County Sheriff's Office ("County"). (Second Amended Compl. ("SAC") ¶ 1, Dkt. No. 36.) On August 10, 2018, Defendants filed a motion to dismiss the complaint and a motion to strike portions of the complaint concerning a prior case filed by Plaintiff's counsel. (Defs.' Mot. to Dismiss, Dkt. No. 38; Defs.' Mot. to Strike, Dkt. No. 39.)

Upon consideration of the parties' filings, as well as the arguments presented at the October 4, 2018 hearing, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss, and DENIES Defendants' motion to strike.

## I. BACKGROUND

On December 25, 2016, Plaintiff's husband called the Oakland Police Department ("OPD"), claiming that Plaintiff had violated a temporary restraining order. (SAC ¶ 13.) On December 26, 2016, at around 1:00 a.m., OPD officers responded to the call. (SAC ¶ 14.) The OPD officers arrested Plaintiff for violating the restraining order and took her to Santa Rita Jail, where she was transferred into the custody of the County. (SAC ¶¶ 17, 19.)

Plaintiff was placed in a cell that had fecal matter spread over the walls and benches.

(SAC ¶ 19.) The wall had bloody hand smears, mucus, blood, and medical pads with human hair stuck to them. (SAC ¶ 19.) A sign with contact numbers for assistance was scratched and illegible. (SAC ¶ 19.) Plaintiff was taken out of the cell and searched in the hallway without any privacy screening. (SAC ¶ 20.) She was then placed in another cell and told she would be interviewed by a nurse. The second cell contained piles of rotting food, stains of dried fluids on the walls and benches, and garbage and used tissue or toilet paper piled alongside the toilet. (SAC ¶ 20.) There were no trash receptacles in the room. (SAC ¶ 20.) The room was constructed from cinderblocks and was very cold, but Plaintiff was not provided with adequate clothing or a blanket. (SAC ¶ 21.)

Plaintiff was eventually interviewed by a male deputy. (SAC ¶ 22.) She told the deputy that she needed feminine hygiene products, and that she was not feeling well. The deputy said she would be seen by a nurse. Plaintiff was not provided any feminine hygiene products or seen by a nurse. (SAC ¶ 22.)

Plaintiff was then moved to a third holding cell. (SAC ¶ 23.) The cell was also strewn with garbage, including food and used medical supplies. The cell floors and walls had dried human fluids and discharge on them. (SAC ¶ 23.) The cell also lacked a trash receptacle. (SAC ¶ 24.) Plaintiff, meanwhile, was menstruating and bleeding over her clothes, and the blood seeped through her pants and onto the concrete bench. (SAC ¶ 23.) The blood began to puddle on the bench. Plaintiff began knocking and banging on the door and window to get help, but no deputies passed by or checked the room. (SAC ¶ 23.) Instead, Plaintiff only saw individuals in civilian clothing with identification badges, who did not respond to Plaintiff's requests for assistance. (SAC ¶ 24.)

After hours of banging on the window and door, a female deputy arrived, bringing in another woman. (SAC ¶ 25.) Plaintiff again requested menstrual pads, and the female deputy returned with two pads. Plaintiff put on the pad, getting blood on her hands in the process. Because there was no soap or paper towels in the cell, Plaintiff rinsed the blood off in the drinking fountain and wiped her hands off on her clothing. (SAC ¶ 25.)

Around 9:30 a.m., Plaintiff was discharged and given a bus ticket and BART ticket. (SAC

¶ 26.) Prior to her discharge, Plaintiff never saw the cells cleaned. Plaintiff took public transportation back in her wet, visibly blood-stained clothing. (SAC ¶ 27.)

On December 5, 2017, Plaintiff filed the instant suit. (Dkt. No. 1.) On January 21, 2018, Plaintiff filed a first amended complaint.[1] (Dkt. No. 5.) Defendants then filed a motion to dismiss. (Dkt. No. 25.) On June 20, 2018, the Court granted Defendants' motion to dismiss. (Ord. at 1, Dkt. No. 34.) The Court found that Plaintiff had pled a cruel and unusual punishment claim under the Fourteenth Amendment, but that Plaintiff had failed to sufficiently allege supervisory liability as to the individual Defendants and *Monell* liability as to Defendant County of Alameda. (Ord. at 8-17.) The Court also found that Plaintiff failed to adequately plead her equal protection and negligence claims. (Ord. at 12-13.)

On July 20, 2018, Plaintiff filed her second amended complaint, bringing claims for: (1) Fourteenth Amendment due process claim based on conditions of confinement; (2) Fourteenth Amendment equal protection claim; and (3) negligence. On August 10, 2018, Defendants filed the instant motion to dismiss and motion to strike. On August 29, 2018, Plaintiff filed her oppositions. (Plf.'s Opp'n to Mot. to Dismiss, Dkt. No. 47; Plf.'s Opp'n to Mot. to Strike, Dkt. No. 48.) On September 5, 2018, Defendants filed their replies. (Defs.' Reply re Mot. to Dismiss, Dkt. No. 49; Defs.' Reply re Mot. to Strike, Dkt. No. 50.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

---

[1] The initial complaint and first amended complaint were also filed against the City of Oakland and OPD officers. The Oakland Defendants have since been dismissed with prejudice. (Ord. at 6-8, Dkt. No. 34.)

3

there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

**B. Motion to Strike**

Federal Rule of Civil Procedures 12(f) provides that, on its own or on a motion from a party, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purposes of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "A matter is immaterial if it has no essential or important

4

relationship to the claim for relief pleaded," and "[a] matter is impertinent if it does not pertain and is not necessary to the issues in question in the case." *Id.* Motions to strike, however, "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution of the merits." *Id.* (citation omitted). Thus, "[b]efore a motion to strike is granted the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). As with a motion to dismiss, "the court must view the pleading under attack in the light most favorable to the pleader." *Id.* (citation omitted).

## III. DISCUSSION

### A. Motion to Dismiss

#### i. Conditions of Confinement

Defendants contend that Plaintiff's conditions of confinement claim fails because Plaintiff's allegations are not "sufficiently grave" because Plaintiff was held for at most 8.5 hours. (Defs.' Mot. to Dismiss at 5-6.)

As an initial matter, the parties dispute whether Defendants may challenge the conditions of confinement claim because the Court previously found the pleading to be sufficient. (Plf.'s Opp'n to Mot. to Dismiss at 1; Defs.' Reply re Mot. to Dismiss at 2-3.) In the prior motion to dismiss, Defendants primarily challenged the conditions of confinement claim based on Plaintiff's failure to make a subjective showing of deliberate indifference. (Dkt. No. 25 at 5-6.) While Defendants also made a general argument of insufficient allegations, Defendants did not challenge the claim based on duration specifically. (*See id.* at 6.) As Defendants never previously raised the duration issue, the Court will consider it on the merits.

The Court disagrees with Defendants that Plaintiff cannot bring a Fourteenth Amendment claim based solely on the length of time she was detained. In general, "[i]nmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1067-68 (9th Cir. 2016). For pre-trial

detainees, "the guarantees of the Eighth Amendment provide a *minimum standard of care* for determining their rights . . . ." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003).

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Although "routine discomfort inherent in the prison setting" is insufficient to establish a constitutional violation, deprivations of "the minimum civilized measure of life's necessities" may be "sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (internal quotations omitted). In determining whether there is a constitutional violation, the court considers "[t]he circumstances, nature, and duration of a deprivation of these necessities." *Id.* Moreover, "[t]he more basic the need, the shorter the time it can be withheld." *Id.* (internal quotation omitted).

Defendants rely primarily on *Anderson v. County of Kern*, which concerned the use of safety cells for suicidal and mentally disturbed inmates. 45 F.3d 1310, 1312 (9th Cir. 1995). The safety cell was approximately ten by ten feet, covered with rubberized foam padding, and had a pit toilet with a grate. *Id.* at 1313. Suicidal inmates in safety cells were given only paper clothing. *Id.* Violent inmates were shackled to the grate over the pit toilet. *Id.* The inmates testified that the cell was "dark, scary, and smelled bad, and that the pit toilet was encrusted with excrement and urine." *Id.* The plaintiffs' expert also testified that the cell was small, dark, dingy, and scary, and that the conditions were be psychologically damaging especially to suicidal and mentally disturbed inmates. *Id.*

The Ninth Circuit found that while the safety cell was "a very severe environment, . . . it [wa]s employed in response to very severe safety concerns." *Anderson*, 45 F.3d at 1314. The Ninth Circuit pointed to testimony that some prisoners became so violent that temporary placement in the safety cell was necessary to prevent self-harm. *Id.* While the Ninth Circuit acknowledged that the inmates were deprived of sinks, stand-up toilets, and beds in the safety cell, there was testimony that they could use those items to hurt themselves, such that "[d]eprivation of those articles for short periods of time during violent episodes is constitutionally justifiable." *Id.* As to the claim that the cell was dirty and smelled, the Ninth Circuit agreed that "subjection of a

6

prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Id.* The Ninth Circuit found, however, that the plaintiffs had not shown "that the sanitary limitations imposed upon them were more than temporary." *Id.* at 1315. More significantly, the plaintiffs had failed to "show why possible sanitation problems required that the County be enjoined permanently from *ever* making *any* use, however temporary, of a safety cell for mentally disturbed or suicidal prisoners." *Id.*

The Court finds *Anderson* to be distinguishable. While the Ninth Circuit did consider the duration of the prisoner's confinement in the cell, it focused primarily on whether the confinement itself was justifiable, including the need to prevent prisoners from physically harming themselves. *Anderson*, 45 F.3d at 1314-15. In other words, duration was not the sole factor the Ninth Circuit considered; it also reviewed the circumstances of the deprivation. *See Johnson*, 217 F.2d at 731; *Walker v. Ahren*, Case No. 16-cv-4988-YGR, 2018 WL 2267745, at *7 (N.D. Cal. May 17, 2018) (noting that the *Anderson* court was "ultimately focusing on the temporary and emergency situation presented").

Here, in contrast, Defendants present no justification for even temporary placement in the unsanitary conditions of the cell or for the failure to provide menstrual pads on request. Thus, this case is more comparable to *Darnell v. Pineiro*, a case that challenged conditions of confinement for pretrial detainees. 849 F.3d 17 (2d Cir. 2017). There, the plaintiffs had been held for ten to twenty-four hours, and were "allegedly subjected to one or more degrading conditions of confinement that purportedly constitute nine types of constitutional deprivations," including unusable toilets, garbage and inadequate sanitation, lack of toiletries and other hygienic items, and extreme temperatures. *Id.* at 23-25. For example, the cells had feces and urine caked to the floors and were covered in garbage and rotting food, and one plaintiff who was menstruating began bleeding all over herself when the officers ignored her repeated requests for menstrual pads. *Id.* at 24-25. The district court granted summary judgment to the defendants, concluding that "no plaintiff could establish an objective constitutional deprivation because no plaintiff could link any condition to any actual serious injury, and because the period of confinement did not exceed twenty-four hours for any plaintiff." *Id.* at 27.

The Second Circuit reversed. As an initial matter, it noted that there was "no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (internal quotation omitted). Thus, "bright-line limits are generally incompatible with Fourteenth Amendment teaching that there is no 'static' definition of a deprivation, and the Supreme Court's instruction that any condition of confinement can mutually enforce another, so long as those conditions lead to the same deprivation." *Id.* at 31. Applying these principles to a situation where "the plaintiffs have adduced substantial evidence, much of it uncontroverted, that they were subjected to appalling conditions of confinement to varying degrees and for various time periods," the Second Circuit concluded that "the plaintiffs' claims should not have been dismissed on the grounds that the conditions in this case did not exceed ten to twenty-four hours . . . ." *Id.* at 37. To find otherwise would essentially find "that no set of conditions, no matter how egregious, could state a due process violation if the conditions existed for no more than ten to twenty-four hours." *Id.* In short:

> Ultimately, the defendants' theory appears to be that state officials are free to set a system in place whereby they can subject pretrial detainees awaiting arraignment to absolutely atrocious conditions for twenty-four hour periods . . . without violating the Constitution so long as nothing actually catastrophic happens during those periods. That is not the law. [O]ur Constitution and societal standards require more, even for incarcerated individuals, and especially for pretrial detainees who cannot be punished by the state. This Court's cases are clear that conditions of confinement cases must be evaluated on a case-by-case basis according to severity and duration, and instructs that a pretrial detainee's rights are at least as great as those of a convicted prisoner.

*Id.* at 37.

The Court finds *Darnell* highly persuasive. Plaintiff alleges conditions that include filthy cells covered in garbage, partially rotting food, used medical supplies, and human bodily fluids. (SAC ¶¶ 19, 20, 23.) At least one of the holding cells was constructed entirely out of cinderblocks and was very cold, yet Plaintiff was not provided with adequate clothing or a blanket. (SAC ¶ 21.) Plaintiff's initial attempts to obtain menstrual pads were ignored, causing her to bleed through her clothing and onto the concrete bench; until she was finally given menstrual pads hours later, she

8

was stuck in bloody clothing, creating a risk of infection. (SAC ¶¶ 23, 25.) When she was given menstrual pads, she got blood all over her hands, but the cell lacked soap or paper towels; she was instead forced to wash her hands in the drinking fountain, creating an even more unsanitary environment. (SAC ¶ 25.) The Court will not find that these conditions cannot constitute a constitutional violation simply because they lasted at most 8.5 hours. To find otherwise would permit Defendants to subject pre-trial detainees to the most appalling conditions without any repercussions, as long as it "only" lasts for several hours.

### ii. Equal Protection

Plaintiff brings a § 1983 claim under the Fourteenth Amendment's Equal Protection Clause, based on the failure to provide feminine hygiene products and the means to maintain personal cleanliness. (SAC ¶ 71.)

In general, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "When a statute gender-neutral on its face is challenged on the ground that its effects upon women are disproportionately adverse, a twofold inquiry is thus appropriate." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979). The first question looks to whether the "classification is indeed neutral in the sense that it is not gender based. If the classification itself, covert or overt is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination." *Id.*

Here, however, Plaintiff's claim concerns not a gender-neutral policy but one that is specific to women. In such a case, at least one court has found that discriminatory intent need not be established. In *Bullock v. Dart*, all male inmates returning from court were required to return to their housing divisions, including those who were being discharged. 599 F. Supp. 2d 947, 953 (N.D. Ill. 2009). Before returning to their housing division, a strip search was required. *Id.* Female inmates who were being discharged, in contrast, were subject to a policy which did not require them to return to their housing divisions, therefore allowing them to avoid the strip search.

9

*Id.* The district court found that in the usual Equal Protection case, the plaintiffs "must demonstrate discriminatory intent" because most cases concerned "statutes, ordinances, or other state action that is facially neutral but that disproportionately affects one group of individuals." *Id.* at 956. The policy of excepting female inmates who were being discharged, in contrast, was not gender neutral because the policy facially applied only to female discharges. *Id.* at 957. Thus, the case was similar to other Supreme Court cases involving facially non-neutral policies, noting that "[t]here was no discussion, in these cases, of intent, presumably because the challenged state action discriminates on its face . . . ." *Id.* (citing *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982); *City of Cleburne v. Cleburne Assisted Living Ctr.*, 473 U.S. 432 (1985)). Thus, no further showing of discriminatory intent was required.

The Court finds *Bullock* persuasive. Here, the actions at issue -- the failure to enforce a policy that applies *only* to female inmates -- is not gender neutral.[2] Rather, Defendants have agreed to policies regarding menstrual pads as part of a settlement agreement in *Weills v. Alameda County Sheriff's Office*, Case No. 14-cv-4773-VC, a case that challenged similar practices. (*See* SAC ¶¶ 44, 71.) Those policies, for example, require that a female deputy advise a female inmate of the ability to request feminine hygiene products and that all reasonable efforts will be made to comply with that request within thirty minutes. (SAC ¶ 43.) Thus, like the policy in *Bullock*, the complained of actions apply only to women, and no further discriminatory intent need be established. The Court therefore concludes that this claim may proceed.

### iii. Supervisory Liability and Qualified Immunity

With respect to the individual Defendants, Defendants argue that Plaintiff has failed to plead sufficient facts establishing supervisory liability. (Defs.' Mot. at 8.) Defendants also argue

---

[2] Further, as a practical matter, Plaintiff correctly points out that men never require menstrual pads because they do not menstruate; menstruation is a wholly female function. *See U.N. Human Rights Council, Res. The Human Right to Safe Drinking Water and Sanitation, Preamble*, U.N. Doc. A/HRC/RES/27/7 (Oct. 2, 2014), *available at* https://daccess-ods.un.org/TMP/674197.003245354.html (noting "that the lack of access to adequate water and sanitation services, including menstrual hygiene management, and the widespread stigma associated with menstruation have a negative impact on gender equality and the human rights of women and girls"); Inga T. Winkler & Virginia Roaf, *Taking the Bloody Linen Out of the Closet: Menstrual Hygiene as a Priority for Achieving Gender Equality*, 21 CARDOZO J.L. & GENDER 1.

1 that even if Plaintiff had sufficiently pled supervisory liability, the individuals Defendants would
2 be entitled to qualified immunity. (*Id.* at 10.)

The Court agrees that the individual Defendants are entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (internal quotation omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations omitted). In determining if qualified immunity exists, the Court must generally first determine whether the facts make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Next, the Court determines if "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* In *Pearson*, however, the Supreme Court found that this two-step sequence was not mandatory (although beneficial), and that some cases could be decided by going directly to the second step. *Id.* at 236.

As discussed above, Plaintiff has adequately pled a Fourteenth Amendment claim based on conditions of confinement, as well as an equal protection claim. Plaintiff, however, fails to demonstrate that the right at issue was clearly established at the time of the alleged misconduct. The Supreme Court has overturned the rejection of qualified immunity where the court "failed to identify a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [Constitution]." *White*, 137 S.Ct. at 552. Moreover, "general statements of the law are not inherently incapable of giving fair and clear warning to officers . . . the general rules set forth in *Garner* and *Graham* do not by themselves create clearly established law outside an obvious case." *Kisela*, 138 S.Ct. at 1153 (internal quotations omitted).

Here, while there are cases that generally find conditions of confinement can be the basis of a cruel and unusual punishment claim, Plaintiff has not identified any binding authority that incarceration of the duration at issue in this case is actionable. Even *Darnell*, which this Court finds persuasive, was issued in February 2017, after Plaintiff's confinement in December 2016. (SAC ¶¶ 13, 17.) *Darnell* is also not binding in this Circuit. Instead, Plaintiff only challenges Defendants' authority as distinguishable, while failing to identify any binding cases presenting

11

similar circumstances. (Plf.'s Opp'n to Mot. to Dismiss at 7-8.) While Plaintiff points to the *Weills* settlement, as well as a California Penal Code section that does not appear to apply to the County, neither of these establish a *constitutional* violation.

As to the equal protection claim, Plaintiff cites to no on-point binding precedent. Indeed, in support of her equal protection claim, Plaintiff relies on a dissent in *General Electric Co. v. Gilbert*, 429 U.S. 125, 161-62, and the lack of cases that have not held contrary to the dissent. (Plf.'s Opp'n to Mot. to Dismiss at 4.) Plaintiff also acknowledges that with respect to her argument "that when the capacity for a condition is uniquely female, discrimination against that capacity or condition is discrimination on the count of sex . . . there are no 9th Circuit cases on this topic . . . ." (*Id.*)

The Court therefore concludes that the individual Defendants are entitled to qualified immunity, and must be dismissed with prejudice from the case. Because the Court finds that qualified immunity applies, the Court need not determine whether Plaintiff adequately alleged supervisory liability.

### iv. *Monell* Liability

Defendants argue that Plaintiff has failed to adequately allege *Monell* liability. First, Defendants contend Plaintiff cannot show that there is a constitutional violation. (Defs.' Mot. to Dismiss at 9-10.) The Court rejects this contention because, as discussed above, Plaintiff has adequately pled a conditions of confinement claim.

Second, Defendants argue that Plaintiff has failed to plead that the County's employees are inadequately trained to execute its policies. (Defs.' Mot. to Dismiss at 9.) The Court disagrees. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* (internal quotations omitted). To establish that deliberate indifference, there must be a showing

12

that the "municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* (internal quotation omitted). In other words, the municipality's "policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* at 61-62 (internal quotation omitted).

Here, the Court finds that Plaintiff has adequately pled actual or constructive notice based on the *Weills* lawsuit, which was filed on October 27, 2014. (SAC ¶ 40.) As in the instant case, the *Weills* lawsuit alleged conditions in Santa Rita jail, including filthy cells covered in human fluids, garbage, and decaying food. The lawsuit also alleged that one of the plaintiffs was not given menstrual pads, resulting in her bleeding all over her pants. (SAC ¶ 40.) To resolve the lawsuit, the County entered into a settlement that adopted new policies which required inspection of cells for cleanliness, corrections for cleanliness issues, and the provision of menstrual pads. (SAC ¶¶ 41-43.) Moreover, given that this is the pleading stage, the Court finds that the factual allegations are sufficient to place Defendants on fair notice of the factual basis of municipal liability.[3] *Compare with Sincerny v. City of Walnut Creek*, Case No. 17-cv-2616-HSG, 2018 WL 1569832, at *1 (N.D. Cal. Mar. 30, 2018) (allegation that there was an official custom of arresting persons without probable cause based on the failure to use constitutional procedures and perform proper show ups was sufficient to state a *Monell* claim at the pleading stage); *Duenez v. City of Manteca*, No. Civ. S-11-1820 LKK/KJN, 2012 WL 4359229, at *9 (E.D. Cal. Feb. 23, 2012) ("Plaintiff need not articulate the intricacies of the alleged policy further at the pleading stage. Thus, Defendants' motion to dismiss Plaintiffs' *Monell* claim is denied).

### v. Negligence

Finally, Defendants seek dismissal of the negligence claim because Plaintiff fails to identify what the basis of the claim is, making it unclear if the "negligence claim stems from the

---

[3] Defendants cite to *Trevino v. Gates*, which concerned whether *Monell* liability was established at the summary judgment stage. 99 F.3d 911, 918 (9th Cir. 1996).

13

allegedly 'unhygienic cell conditions' she was subjected to . . . the unspecified defendants' 'failure to provide Plaintiff feminine hygiene products when requested,' 'the failure to have Plaintiff interviewed by a nurse, the failure to have adequate checks of the cell, the failure to clean, the search without privacy, and/or a different issue.'" (Defs.' Mot. to Dismiss at 11 (quoting Ord. at 13).)

The Court agrees. With respect to the negligent act, Plaintiff simply incorporates paragraphs 1-61 of her complaint. (SAC ¶ 73.) With respect to duty, Plaintiff only identifies one specific state law, Penal Code § 3409. (SAC ¶ 74.) Plaintiff also fails to identify what specific injury was caused. These are not adequate to put Defendant on notice of the specific basis of her negligence claim. Notably, in her opposition, Plaintiff fails to address her negligence claim on the merits; she only addresses the state immunity defenses. (Plf.'s Opp'n to Mot. to Dismiss at 8-9.)

Because Plaintiff's negligence claim is little more than a "formulaic recitation of elements of the cause of action," the Court GRANTS Defendants' motion to dismiss this claim. Since amendment is not futile, the Court gives Plaintiff leave to amend. Another failure, however, to identify the factual basis of the negligence claim **will** result in dismissal with prejudice.[4]

### B. Motion to Strike

Defendants also bring a motion to strike all references to the *Weills* case and the policies that were adopted. (Defs.' Mot. to Strike at 2, 3 (seeking to strike SAC ¶¶ 36 and 40-45).) As discussed above, the *Weills* case is relevant to the *Monell* liability allegations. Although Defendants argue that the settlement cannot be used to establish liability under Federal Rule of Evidence 408, as an initial matter, Rule 408 applies to settlement negotiations; it would not preclude *all* mentions of the *Weills* lawsuit, such as its existence and effect on Defendants' knowledge. Rule 408 would also not apply to the publicly available policies adopted by Defendants, including its policies regarding provision of menstrual products. Further, at least one court in this Circuit has found that settlements can be used to show knowledge with respect to

---

[4] Again, because the Court dismisses Plaintiff's negligence claim based on failure to comply with pleading requirements, the Court need not address the immunity defenses.

14

*Monell* liability. *See Cunningham v. Gates*, No. CV 96-2666 CBM, 2006 WL 2294877, at *1-2 (C.D. Cal. Aug. 2, 2006) (denying motion to exclude evidence of settlements because "[t]he settlements at issue do not involve this case and are relevant to demonstrate whether Defendant policymakers knew of and acquiesced in officers' conduct"). Finally, given "the disfavored status of motions to strike, and the absence of any allegations by [D]efendants that they are prejudiced by the presence of these statements in the complaint," the Court DENIES the motion to strike. *Stewart v. Wachowski*, No. CV 03-2873 MMM (VBKx), 2004 WL 5618386, at *6 (C.D. Cal. Sept. 28, 2004). Defendants may move to exclude evidence of the settlement agreement at a later time if appropriate; again, however, Rule 408 would appear to be limited to the settlement negotiations and agreement, **not** the existence of the *Weills* lawsuit or the publicly available policies that resulted from the negotiations.

## IV. CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss. While Plaintiff has pled sufficient facts for Fourteenth Amendment conditions of confinement and equal protection claims against the County, the Court finds these claim must be dismissed with prejudice as to the individual Defendants based on qualified immunity. The Court also dismisses the negligence claim without prejudice. The Court DENIES Defendants' motion to strike. Plaintiff may file an amended complaint within thirty days of the date of this order, consistent with this order. The Court CONTINUES the case management conference set for November 13, 2018 to **February 19, 2019** at **1:30 p.m.**

IT IS SO ORDERED.

Dated: October 30, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge

15