UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA N TURANO,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants. | Case No. 17-cv-06953-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 60 |

Plaintiff Cynthia Turano filed the instant putative class action, bringing constitutional and state claims related to her experience while in the custody of Defendant Alameda County Sheriff's Office ("County"). (Third Amended Compl. ("TAC") ¶ 1, Dkt. No. 59.[1]) On December 10, 2018, Defendants filed a motion to dismiss the third and fourth causes of action. (Defs.' Mot. to Dismiss, Dkt. No. 60.)

Upon consideration of the parties' filings, as well as the arguments presented at the February 7, 2019 hearing, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## I. BACKGROUND

On December 25, 2016, Plaintiff's husband called the Oakland Police Department ("OPD"), claiming that Plaintiff had violated a temporary restraining order. (TAC ¶ 13.) On December 26, 2016, at around 1:00 a.m., OPD officers responded to the call. (TAC ¶ 14.) The OPD officers arrested Plaintiff for violating the restraining order and took her to Santa Rita Jail, where she was transferred into the custody of the County. (TAC ¶¶ 17, 19.)

Plaintiff was first placed in a cell that had fecal matter spread over the walls and benches,

---

[1] Plaintiff mislabels the operative complaint as the second amended complaint. Three prior complaints, however, have been filed. (Compl., Dkt. No. 1; First Amended Compl., Dkt. No. 5; Second Amended Compl., Dkt. No. 36.)

and had walls with bloody hand smears, mucus, and medical pads with human hair stuck to them. (TAC ¶ 19.)  Plaintiff was taken out of the cell and searched in the hallway without a privacy screening.  (TAC ¶ 20.)  She was then placed in another cell and told she would be interviewed by a nurse.  The second cell contained piles of rotting food, stains of dried fluids on the walls and benches, and garbage and used tissue or toilet paper piled alongside the toilet.  (TAC ¶ 20.)  The room was constructed from cinderblocks and was very cold, but Plaintiff was not provided with adequate clothing or a blanket.  (TAC ¶ 21.)

Plaintiff was eventually interviewed by a male deputy.  (TAC ¶ 22.)  She told him that she needed feminine hygiene products, and that she was not feeling well.  The deputy said she would be seen by a nurse.  Plaintiff was not provided feminine hygiene products or seen by a nurse. (TAC ¶ 22.)

Plaintiff was then moved to a third holding cell.  (TAC ¶ 23.)  The cell also strewn with garbage, including food and used medical supplies, and the floors and walls had dried human fluids and discharge on them.  (TAC ¶ 23.)  Plaintiff, meanwhile, was menstruating and bleeding over her clothes, and the blood seeped through her pants and onto the concrete bench.  (TAC ¶ 23.)  Plaintiff began knocking and banging on the door and window to get help, but no deputies passed by or checked the room.  (TAC ¶ 23.)  Plaintiff saw individuals in civilian clothing with identification badges, who did not respond to Plaintiff's requests for assistance.  (TAC ¶ 24.)

After hours of banging on the window and door, a female deputy arrived, bringing in another woman.  (TAC ¶ 25.)  Plaintiff again requested menstrual pads, and the female deputy returned with two pads.  Plaintiff put on the pad, getting blood on her hands in the process. Because there was no soap or paper towels in the cell, Plaintiff rinsed the blood off in the drinking fountain and wiped her hands off on her clothing.  (TAC ¶ 25.)

Around 9:30 a.m., Plaintiff was discharged and given a bus ticket and BART ticket.  (TAC ¶ 26.)  Prior to her discharge, Plaintiff never saw the cells cleaned.  Plaintiff took public transportation back in her wet, visibly blood-stained clothing.  (TAC ¶ 27.)

Plaintiff then filed the instant suit.  On November 25, 2018, Plaintiff filed her third amended complaint, asserting claims for: (1) Fourteenth Amendment due process claim based on

2

conditions of confinement; (2) Fourteenth Amendment equal protection claim; (3) negligence; and (4) injunctive relief. On December 10, 2018, Defendants filed the instant motion to dismiss the third and fourth causes of action. On December 24, 2018, Plaintiff filed her opposition. (Plf.'s Opp'n, Dkt. No. 61.) On December 31, 2018, Defendants filed their reply. (Defs.' Reply, Dkt. No. 64.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's

3

liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

## III. DISCUSSION

### A. Negligence Claim

As an initial matter, the parties agree that the negligence claim against Defendants County of Alameda and Alameda County Sheriff's Office should be dismissed. (Plf.'s Opp'n at 6; Defs.' Reply at 2-3.) The parties dispute, however, whether the negligence claim against the individual Defendants are barred by statutory immunities, and whether the claim is sufficiently pled.

#### i. Statutory Immunity

Defendants argue that the individual Defendants are immune per California Government Code § 820.2 and § 820.8. (Defs.' Mot. to Dismiss at 4-5; Defs.' Reply at 3-5.) The Court disagrees.

a. Section 820.2 Immunity

Section 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." In determining whether an act is discretionary, "courts do not look at the literal meaning of 'discretionary' because almost all acts involve some choice between alternatives." *Martinez v. City of L.A.*, 141 F.3d 1373, 1379 (9th Cir. 1998) (internal quotation omitted). Instead, "immunity protects 'basic policy decisions,' but does not protect 'operational' or 'ministerial' decisions that merely implement a basic policy decision." *Id.* (internal quotation omitted). Basic policy decisions are those that "have been expressly committed to coordinate branches of government, and as to which judicial interference would thus be unseemly." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995).

4

Defendants cite no authority that applied § 820.2 immunity to facts similar to the instant case. Courts in this circuit, however, have declined to find supervisory acts immune. In *Alexander v. California Department of Corrections and Rehabilitation*, the plaintiffs filed suit over the death of their father, who was strangled by his cellmate at Deuel Vocational Institution ("DVI"). No. 2:11-cv-640 TLN CKD, 2014 WL 7336668, at *1 (E.D. Cal. Dec. 24, 2014). The defendants were the former secretary of the Department of Corrections and the former warden of DVI. *Id.* The plaintiffs alleged that the defendants, as supervisors, failed to follow or enforce policies concerning inmate classification and provision of immediate life support, and were deliberately indifferent to prison overcrowding. *Id.* at *4-5. The district court found that these alleged acts and omissions "fall into the operational, rather than the policy-making category," and thus § 820.2 immunity did not apply. Likewise, in *Randolph v. City of E. Palo Alto*, the plaintiffs alleged that the defendants were negligent in hiring, training, and supervising their officers. Case No. 06-cv-7476-SI, 2008 WL 618908, at *10 (N.D. Cal. Mar. 1, 2008). The district court disagreed "that the hiring, training, and supervision of particular employees are policy decisions that implicate the planning functions of government. Rather, defendants' decision to hire [the officer] and provide him with certain levels of training and supervision are ministerial decisions in which defendants were simply carrying out the day-to-day operations of their government." *Id.* at *11.

Like the *Alexander* and *Randolph* courts, the Court finds that § 820.2 immunity does not apply in this case because Plaintiff challenges the implementation of existing policies, not the policies themselves. Specifically, Plaintiff asserts that policies have been adopted "for the appropriate care and confinement of women incarcerated in Santa Rita Jail," but that Defendants have failed to ensure that "said policies were in fact being carried out and carried out appropriately." (TAC ¶ 73.) Defendants also failed to discipline employees "for failures to comply with or execute [the] adopted policies." (*Id.*) The failure to implement includes the alleged failures to properly train staff, develop appropriate and necessary processes, supervise staff, and discipline staff." (TAC ¶ 74.) This implementation is an operational decision, not a basic policy decision, and therefore not a discretionary act entitled to § 820.2 immunity.

### b. Section 820.8 Immunity

Section 820.8 states: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Thus, § 820.8 immunizes an individual from vicarious liability. *See Weaver By and Through Weaver v. State of California*, 63 Cal. App. 4th 188, 203 (1998).

In *Johnson v. Baca*, the district court found that § 820.8 immunity did not apply where the plaintiff sought to hold a sheriff liable based on his failure to implement adequate policies and sufficiently train staff to avoid violation of inmates' rights. Case No. CV 13-4496 MMM (AJWx), 2014 WL 12588641, at *17 (C.D. Cal. Mar. 3, 2014). In other words, the plaintiff sought to hold the defendant "personally liable for his conduct as a supervisor." *Id.*; *see also Doe v. Regents of Univ. of Cal.*, No. CIV. S-06-1043 LKK/DAD, 2006 WL 2506670, at *5 (E.D. Cal. Aug. 29, 2006) (denying motion to dismiss on § 820.8 immunity grounds where the plaintiffs' theory of liability was based on the defendant's direct actions as a supervisor); *Phillips v. Cty. of Fresno*, No. 1:13-cv-538 AWI BAM, 2013 WL 6243278, at *13 (E.D. Cal. Dec. 3, 2013) ("Plaintiffs' complaint . . . allege[s] the direct participation of the supervisory Defendants in Plaintiffs' harms based on the failure to carry out various managerial functions to prevent the harm, including adequate discipline, training, supervision and the failure to promulgate appropriate policies. Thus there is no apparent applicability of section 820.8."); *Staten v. Calderon*, No. F052046, 2008 WL 4446526, at *8 (Cal. Ct. App. Oct. 3, 2008) ("the immunity provided by section 820.8 does not extend to claims of negligent training and supervision").[2]

Such is the case here, where Plaintiff does not assert a negligence claim based on vicarious liability. Instead, Plaintiff brings her claims against the individual defendants based on their own actions as supervisors, including their alleged negligence in training, developing processes, supervising staff, and disciplining staff for failures to comply with the adopted policies. (TAC ¶ 18.) Thus, the Court concludes that § 820.8 immunity does not apply in this case.

---

[2] Although unpublished state appellate decisions have no precedential value, they may be cited as persuasive authority. *See Emp'rs Ins. Of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

6

### ii. Specific Injuries

Defendants also argue that Plaintiff did not allege a specific injury because she only alleges "personal injuries," but does not specify what those injuries are. (Defs.' Mot. to Dismiss at 6; Defs.' Reply at 2.) Defendants are incorrect. Plaintiff does not simply allege "personal injuries," but describes those injuries, including that she suffered having to be incarcerated in filthy cells, being forced to bleed all over her clothing, being left shivering in wet bloody clothing in a cold cell, and having to travel in public in bloody and wet clothing. (TAC ¶¶ 77-80.) Defendants fail to explain why these allegations are insufficiently specific. The Court finds these allegations are sufficiently specific to put Defendants on notice of the injury suffered, and DENIES Defendants' motion to dismiss the negligence claim as to the individual Defendants.

### B. Injunctive Relief

Defendants also move for dismissal of the injunctive relief claim. As an initial matter, Defendants argue that the claim should be dismissed because Plaintiff was not given permission to assert a new cause of action. (Defs.' Mot. to Dismiss at 6.) While Plaintiff did not previously assert an injunctive relief claim, Plaintiff has consistently sought injunctive relief in her past complaints. (Compl. at 16; FAC at 18; SAC at 19.) Thus, the Court finds it appropriate to consider the injunctive relief claim on the merits.

Defendants argue that Plaintiff lacks standing to bring the injunctive relief claim. (Defs.' Mot. to Dismiss at 6.) To seek injunctive relief, Plaintiff must plead that she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotations omitted).

First, Defendants contend that Plaintiff lacks standing because Plaintiff would only be incarcerated if she is lawfully arrested again. (Defs.' Mot. to Dismiss at 7; Defs.' Reply at 4.) In general, "standing is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff." *Armstrong v. Davis*, 275 F.3d 849, 865 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). A lawful arrest, however, does not necessarily mean Plaintiff has acted illegally. Indeed, Plaintiff

challenges whether she committed any illegal conduct. (Plf.'s Opp'n at 2; *see also* TAC ¶¶ 16-17, 85.) The Court rejects Defendants' argument.

Second, Defendants argue that any future arrest is speculative, such that Plaintiff has no reasonable expectation of suffering a future incarceration. (Defs.' Mot. to Dismiss at 7; Defs.' Reply at 7-8.) Generally, "the threat of future harm may confer standing," although the plaintiff has the burden of making "[a] reasonable showing of a 'sufficient likelihood' that the plaintiff will be injured again." *Nelsen v. King Cty.*, 895 F.2d 1248, 1250 (9th Cir. 1990) (internal quotation omitted). Moreover, "past exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." *Id.* at 1251. Thus, an "alleged past exposure to harm is not sufficient to confer standing." *Id.* Rather, where courts "have found standing to exist for a threat of future harm, it has consistently been determined that some systematic pattern, repetition or relationship exists." *Id.* at 1254.

In *Nelsen*, the plaintiffs were residents at an alcoholic treatment center, following the commission of alcohol-related offenses. 895 F.2d at 1249. The plaintiffs sought injunctive relief regarding the unsanitary conditions at the treatment center. *Id.* The Ninth Circuit found that the plaintiffs lacked standing for injunctive relief. In so finding, the Ninth Circuit rejected the plaintiffs' argument that they could return to the treatment center because 35% of inpatients repeated the program, instead explaining that a trial court would have to make an individualized inquiry as to whether the plaintiffs themselves may return to the center. *Id.* at 1251-52. Looking at the record, the Ninth Circuit found that a claim of future injury was "conjectural" because in order to return to the treatment center, the plaintiffs "would have to remain within [the c]ounty, remain indigent, begin drinking uncontrollably several years after their discharge from the [treatment c]enter . . . [,] commit an alcohol-related offense, be prosecuted for that offense, be convicted, be offered the choice to reenter the [treatment c]enter, make that choice, *and* find that the conditions at the [treatment c]enter were the same as they allegedly were when" previously there. *Id.* at 1252. Thus, because the threat of future harm was "based upon an extended chain of highly speculative contingencies, all of which would have to be fulfilled in order to have the threat of returning to the [treatment c]enter become manifest," the plaintiffs lacked standing. *Id.*

Here, Plaintiff argues that she is likely to be falsely arrested again because she lives, works, shops, and socializes in Alameda County, is engaged in divorce proceedings in Alameda County, and whose estranged spouse resides in Alameda County. (Plf.'s Opp'n at 3.) Plaintiff further alleges in her complaint that the divorce is ongoing and that a restraining order is still in place. (TAC ¶ 85.) Plaintiff, however, does not assert that she has any contact with her husband, or that they continue to live with each other. There are also no allegations that Plaintiff has been falsely accused by her husband, or arrested based on false accusations, since the filing of the complaint in December 2017 or the original arrest in December 2016. While a closer case than *Nelsen*, the Court finds that the likelihood that Plaintiff will be falsely arrested again is still speculative, as it will require that Plaintiff's husband make another allegedly false accusation that Plaintiff violated the terms of a restraining order, which Plaintiff has not established is likely to occur again. *Contrast with Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983) ("credible threat" where the plaintiff "ha[d] been stopped on approximately 15 occasions pursuant to [the challenged statute] . . . in a period of less than two years.").[3]

Accordingly, the Court DISMISSES the injunctive relief claim based on lack of standing.

## IV.  CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. The negligence claim is dismissed as to Defendants County of Alameda and Alameda County Sheriff's Office, and the injunctive relief claim is dismissed.

IT IS SO ORDERED.

Dated: February 8, 2019

KANDIS A. WESTMORE
United States Magistrate Judge

---

[3] At the hearing, Plaintiff argued that *Weills v. Ahren*, Case No. 14-cv-4773-VC, had comparable allegations regarding standing. *Weills*, however, involved plaintiffs who had been arrested multiple times, including one plaintiff who was arrested three times in less than three years. More importantly, no substantive court rulings were made in *Weills*, including on whether these allegations were sufficient to confer standing for injunctive relief.